Kline VALENTIN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 489, 2012.

Supreme Court of Delaware.

Submitted: June 12, 2013.

Decided: Aug. 26, 2013.

Tasha Marie Stevens, Fuqua, Yori and Willard, P.A., Georgetown, Delaware for appellant.

Abby Adams, Department of Justice, Georgetown, Delaware for appellee.

Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

STEELE, Chief Justice:

This appeal addresses the State's obligation to produce relevant material in response to a defendant's discovery request. A Superior Court jury convicted the defendant of Failing to Stop at the Command of a Police Officer, Reckless Driving, and several other offenses. The State failed to produce a recording of the officers' communications with the dispatcher in response to the defendant's discovery request. This recording contained evidence that the officers' siren had not been activated, contrary to the officers' testimony.

We conclude that the dispatch recording fell within the scope of the defendant's discovery request and Superior Court Criminal Rule 16. The failure to produce this evidence prejudiced the defendant because the siren's presence was material to the State's case and impeached the credibility of its key witnesses. Accordingly, we REVERSE the Superior Court's judgment regarding the appealed convictions and REMAND for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Kline Valentin's Arrest

Shortly before midnight on February 3, 2012, Sergeant Nicholas Couch and Corporal Gavin Davis of the Delaware Department of Natural Resources (DNREC) were patrolling the Horsey Pond Wildlife Area in a pickup truck. The officers' truck was unmarked, but it had colored lights on its grill and along its visor that would flash when activated. Couch testified that he observed a car in the back of the wildlife area's parking lot with its lights turned off. Because the wildlife area is closed from sunset to sunrise,[1] the officers approached the vehicle to investigate. Couch claimed that he activated the truck's emergency lights and called a police dispatcher to report the planned vehicle stop. As Davis started to get out of the truck, the car's driver started his car and left the parking lot. Couch told the dispatcher that the officers planned to pursue the car.

By the time the officers had turned the truck around, the car had left the parking lot, traveled down a nearby road, and was turning onto Delaware Route 24. The officers testified that the driver failed to stop at a stop sign and did not use the car's turn signal (perhaps understandable for a

1. 7 Del. Admin. C. § 3900–8.2.2.

person in flight). Couch and Davis pursued the car into a nearby residential development but lost sight of it. Upon rediscovering the car, the officers attempted to block its escape, but the driver evaded them by driving into some grass. Once the officers regrouped, they again trapped the car by blocking an intersection. Davis claimed he yelled "Police, Stop!" in the car's direction. This time the driver complied. The officers later identified the car's driver as Defendant–Appellant Kline Valentin. Couch testified that Valentin exceeded the speed limit while fleeing and that Couch activated the truck's siren as soon as the officers began their pursuit. According to Davis's police report, Valentin thought that the officers were "park police" and that they would not pursue him once he left the wildlife area's parking lot.

### B. Valentin's Discovery Request

As part of her trial preparation, Valentin's attorney requested discovery from the State. The discovery request contained two paragraphs relevant to this case. Those paragraphs sought:

19. Disclosure of statements, interviews, reports or other information relating to the credibility of any prosecution witness, including but not limited to inconsistent statements, reports or prior testimony.

20. An opportunity pursuant to [*Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957),] and Superior Court Civil [sic] Rule 26.2 to review reports and statements, whether oral, written or recorded, made by persons who will testify at trial, regardless of whether the individual used the statements or report [sic] to prepare for examination.[2]

The State did not object to Valentin's discovery request and responded that "[a]ny such records will be provided when received."

### C. Procedural History

Although the State initially charged Valentin with fourteen offenses, it entered a *nolle prosequi* on two charges and several others were dismissed.[3] Seven charges against Valentin ultimately were before the jury: Failure to Stop at the Command of a Police Officer,[4] Reckless Driving,[5] Speeding,[6] Failure to Stop at a Stop Sign,[7] Entering After Hours onto Division of Fish and Wildlife Land,[8] and two counts of

---

2. App. to Answering Br. B–6.

3. The State entered a *nolle prosequi* on the charges of Failure to Have an Insurance Card in Possession, 21 *Del. C.* § 2118(p), and Failure to Remain Stopped, *id.* § 4164(b). The charges of Endangering the Welfare of a Child, 11 *Del. C.* § 1102(a)(2); Resisting Arrest, *id.* § 1257(b); two counts of Possession of Drug Paraphernalia, 16 *Del. C.* § 4771(a); and Possession of Marijuana, *id.* § 4714(d)(19), were dismissed.

4. 21 *Del. C.* § 4103(b) ("Any driver who, having received a visual or audible signal from a police officer ... to bring the driver's vehicle to a stop, operates the vehicle in disregard of the signal ... or who increases speed ... and attempts to flee or elude the police officer shall be guilty of a class G felony....").

5. *Id.* § 4175(a) ("No person shall drive any vehicle in wilful or wanton disregard for the safety of persons or property, and this offense shall be known as reckless driving.").

6. *Id.* § 4169(a)(2) (providing for a speed limit of "25 miles per hour in any residential district").

7. *Id.* § 4164(a) (requiring that "every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a marked stop line").

8. 7 Del. Admin. C. § 3900–8.2.2 ("It shall be unlawful for any person to be present upon lands or waters administered by the [Division of Fish and Wildlife] between sunset and sunrise....").

Failure to Give a Signal.[9]

At trial, Couch testified that the officers kept in contact with the dispatcher and described the car's maneuvers during the pursuit. After Couch testified about the dispatch recording, Valentin's counsel told the trial judge that the State had not provided her with the recording, which—she argued—was within the scope of her discovery request. She noted that the recording might contain information inconsistent with the officers' testimony. After reviewing the discovery request, the trial judge held that Valentin's counsel's request for "statements, interviews, reports or other information relating to the credibility of any prosecution witness" was "boilerplate" and concluded that these words did not notify the State that Valentin sought the dispatch recording. The trial judge also concluded that the recording was not a "statement" under Superior Court Criminal Rule 26.2.

Valentin testified that he saw a truck approach his car while he was in the parking lot but that he did not know it was a police truck, because the officers never activated the emergency lights or siren. He claimed he feared the unknown truck and left the parking lot to escape from it. Valentin stated he only saw the truck's emergency lights when the officers first attempted to trap the car and that he

thought the officers were going to hit him. Therefore, he swerved out of the way into a safer area, parked his car, and obeyed the officers. He denied hearing any command to stop and denied being trapped by the officers' truck a second time.

The jury convicted Valentin on all charges except for Failure to Give a Signal. Valentin appealed the Failure to Stop at the Command of a Police Officer and Reckless Driving convictions, arguing that the trial judge erroneously held that (1) Valentin's discovery request did not encompass the recording and (2) that the recording was not a "statement" under Superior Court Criminal Rule 26.2, which codifies *Jencks v. United States.*[10]

After Valentin appealed, the State moved to expand the record to include the dispatch recording. While the dispatch recording is generally consistent with the officers' testimony, no sirens can be heard in the background of the transmissions from the officers to the dispatcher.

## II. STANDARD OF REVIEW

■ We review a trial judge's interpretation of the Superior Court Rules of Criminal Procedure relating to discovery *de novo,* and we review the trial judge's application of those Rules under an abuse of discretion standard.[11]

**9.** 21 *Del. C.* § 4155(a) ("No person shall [ ] turn any vehicle without giving an appropriate signal. . . . ").

**10.** *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *Hooks v. State,* 416 A.2d 189, 200 (Del.1980) (citing *Jencks,* 353 U.S. at 672, 77 S.Ct. 1007). Superior Court Criminal Rule 26.2 substantively mirrors Federal Rule of Criminal Procedure 26.2. *Compare* Super. Ct.Crim. R. 26.2, *with* Fed.R.Crim.P. 26.2. The Advisory Committee Notes to Federal Rule 26.2 indicate that it was adopted to incorporate the Jencks Act, 18

U.S.C. § 3500, within the Federal Rules. Fed.R.Crim.P. 26.2, Advisory Committee Notes, 1979 Addition. The United States Congress enacted the Jencks Act in response to the United States Supreme Court's holding in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). *See generally United States v. Johnson,* 200 F.3d 529, 534 (7th Cir.2000) (describing the Jencks Act).

**11.** *Hopkins v. State,* 893 A.2d 922, 927 n. 5 (Del.2006) (citations omitted).

## III. ANALYSIS

### A. *Standards Governing Discovery Violations*

■ Superior Court Criminal Rule 16 requires the State to grant a defendant access to certain information upon that defendant's request. We interpret Rule 16's discovery requirements broadly.[12] That Rule provides, in relevant part,

> Documents and Tangible Objects. Upon request of the defendant the [S]tate shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, *tangible objects*, buildings or places, or copies or portions thereof, *which are within the possession, custody or control of the [S]tate, and which are material to the preparation of the defendant's defense* or are intended for use by the [S]tate as evidence in chief at the trial, or were obtained from or belong to the defendant.[13]

Another Superior Court Criminal Rule applies to witnesses' statements. After a witness has testified, Superior Court Criminal Rule 26.2 allows the party who did not call the witness to require the opposing party to produce "any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified." [14]

■ When we review an alleged discovery violation, we must first determine whether a violation occurred.[15] If we conclude that a discovery violation occurred, we apply a three-factor test that considers "(1) the centrality of the error to the case; (2) the closeness of the case; and (3) the steps taken to mitigate the results of the error." [16] We will reverse a conviction on the basis of a discovery violation only if the defendant's substantial rights are "prejudicially affected." [17] We do not need to address the State's Rule 26.2 obligations [18] if we find that Valentin is entitled to a new trial because the State failed to produce the dispatch recording in response to Valentin's discovery request. Therefore we begin by analyzing Valentin's Rule 16 arguments.

---

**12.** *Secrest v. State*, 679 A.2d 58, 64 (Del.1996) (citing *Ray v. State*, 587 A.2d 439, 441 (Del. 1991)).

**13.** Super. Ct.Crim. R. 16(a)(1)(C) (emphasis added).

**14.** Super. Ct.Crim. R. 26.2(a); *see also Lance v. State*, 600 A.2d 337, 342 (Del.1991) (citations omitted) (reiterating that there is no requirement for the State to identify *Jencks* material during pretrial discovery).

**15.** *See Hopkins*, 893 A.2d at 927 ("In this case, however, we must first determine whether or not the trial judge correctly held that the State committed no Rule 16 violation.").

**16.** *Oliver v. State*, 60 A.3d 1093, 1096–97 (Del. 2013) (quoting *Hopkins*, 893 A.2d at 927) (internal quotation marks omitted).

**17.** *Id.* at 1097 (quoting *Fuller v. State*, 922 A.2d 415, 2007 WL 812752, at *2 (Del. Mar. 19, 2007) (ORDER)) (internal quotation marks omitted).

**18.** A split Ninth Circuit panel has held that a border patrol agent's surveillance transmissions were not "statements" under the Jencks Act. *United States v. Bobadilla–Lopez*, 954 F.2d 519, 523 (9th Cir.1992); *but see United States v. Florack*, 155 F.R.D. 49, 55 n. 2 (W.D.N.Y.1994) (requiring production of dispatch tapes containing a government witness's statements). The Ninth Circuit panel noted, however, that "[t]he recordings involved here may well have been discoverable pursuant to [Federal Rule of Criminal Procedure] 16(a)." *Bobadilla–Lopez*, 954 F.2d at 523.

### B. The Dispatch Recording Fell Within Valentin's Discovery Request and Superior Court Criminal Rule 16

 The State's and Valentin's briefs devote substantial space to arguing whether the dispatch recording is a "statement[ ]" within the scope of Valentin's discovery request or Superior Court Criminal Rule 26.2, but we think this dispute misses the point. Valentin requested "statements, interviews, reports or *other information relating to the credibility of any prosecution witness*,"[19] not merely statements. The trial judge's analysis relied on the word "statements" to the exclusion of the remainder of the paragraph. We find that the dispatch recording clearly falls within the scope of Valentin's discovery request for "other information relating to the credibility of any prosecution witness."[20] The credibility of the officers' testimony that they kept the sirens activated throughout their pursuit is undermined by the absence of sirens in the dispatch recording's background. Although the dispatcher only recorded the officers' intermittent communications, rather than the entire pursuit, a listener cannot hear the sirens even when the officers were speaking with the dispatcher.

In addition to falling within the scope of Valentin's discovery request, the dispatch recording was also discoverable under Rule 16. Rule 16(a)(1)(C) requires the State to permit the defendant to examine "books, papers, documents, photographs, tangible objects, buildings or places," provided that they "are within the possession, custody or control of the [S]tate" and are either (1) "material to the preparation of the defendant's defense," (2) "intended for use by the [S]tate as evidence in chief at the trial," or (3) "were obtained from or belong to the defendant."[21] The dispatch recording (or the storage medium on which it was contained) is a "tangible object[ ]" that was "within the possession, custody, or control of the [S]tate," because it was in the State dispatcher's custody.[22] Finally, the dispatch recording was "material to the preparation of the defendant's defense" because it contained information contradicting the State's witnesses' testimony in a case where the State relied almost entirely upon the witnesses' credibility.

The State contends that the discovery request still did not require it to produce the dispatch recording because the discovery request "was not sufficiently specific to put the State on notice that [Valentin] wanted the dispatch recordings."[23] In *Johnson v. State*, we rejected a similar argument, noting that "[f]ull responses to discovery are not contingent on the exact wording of clear demands."[24] Applying a technical approach "would be contrary to the purpose of modern discovery and to the spirit of the Superior Court Criminal Rules, which seek to provide for the 'just

---

19. App. to Answering Br. B–6 (emphasis added).

20. Superior Court Criminal Rule 16 contains an exception from the State's discovery obligations for witness statements. Super. Ct. Crim. R. 16(a)(2) ("Except as provided in [inapplicable exceptions], this rule does not authorize the discovery or inspection of ... statements by state witnesses or prospective state witnesses.").

21. Super. Ct.Crim. R. 16(a)(1)(C).

22. *Cf. State v. Walker*, 2005 WL 1898928, at *1 (Del.Com.Pl. Aug. 5, 2005) (reasoning that videotapes were "tangible objects" under the Court of Common Pleas Rules of Criminal Procedure).

23. Answering Br. 18.

24. *Johnson v. State*, 550 A.2d 903, 911 (Del. 1988).

determination of every criminal proceeding' and to secure 'fairness in administration.' " [25]

■ It is also irrelevant that the State did not obtain the dispatch recording until Valentin appealed. We have held that the State cannot evade its discovery obligations through ignorance. Rather, "the State has a duty to inform itself of available discoverable evidence." [26] Accordingly, we hold that Valentin properly requested the dispatch recording in his discovery request and the State failed to comply.

Contrary to the State's assertion, our holding will not necessarily require the State to exhaustively review dispatch recordings in every case. This case involved a police pursuit during which the officers frequently provided updates and requested more police support from the dispatcher. The charges against Valentin stemmed from his alleged conduct during the pursuit and the State based its case on the officers' testimony describing Valentin's actions. The dispatch recording provided a crucial independent record of the events as they transpired. The recording of the police pursuit was highly material to these charges and, therefore, to the preparation of Valentin's defense. [27]

## C. The State's Failure to Produce the Dispatch Recording Prejudiced Valentin

■ Because we have determined that the State should have produced the dispatch recording in response to Valentin's discovery request, we next address whether the State's failure to produce the dispatch recording prejudicially affected Valentin's substantial rights. [28] We consider "(1) the centrality of the error to the case; (2) the closeness of the case; and (3) the steps taken to mitigate the results of the error." [29] The State argues that we need not reverse Valentin's conviction because the dispatch recording contains no information that is inconsistent with the officers' testimony. We disagree.

First, the State's disclosure violation was central to the case. To convict Valentin of Failing to Stop at the Command of a Police Officer, the jury must find that Valentin "received a visual or audible signal" from a police officer and "operate[d] the vehicle in disregard of the signal." [30] A key part of Couch's and Davis's testimony was that the truck's siren was activated while the officers were pursuing Valentin, providing an "audible signal" to stop. No

---

**25.** *Id.* (quoting Super. Ct.Crim. R. 2).

**26.** *Oliver v. State,* 60 A.3d 1093, 1097 (Del. 2013) (citing *Doran v. State,* 606 A.2d 743, 745 (Del.1992)).

**27.** We recognize that the majority of police dispatch communications will probably not contain helpful information. In this case, however, the officers repeatedly referenced their communications with the dispatcher. Reasonable pretrial preparation should have revealed that the dispatch recordings might be highly relevant and led the State to inquire further.

**28.** *Oliver,* 60 A.3d at 1097 (quoting *Fuller v. State,* 922 A.2d 415, 2007 WL 812752, at *2 (Del. Mar. 19, 2007) (ORDER)).

**29.** *Id.* at 1096–97 (quoting *Hopkins v. State,* 893 A.2d 922, 927 (Del.2006)) (internal quotation marks omitted).

**30.** 21 *Del. C.* § 4103(b) ("Any driver who, having received a visual or audible signal from a police officer ... to bring the driver's vehicle to a stop, operates the vehicle in disregard of the signal ... or who increases speed ... and attempts to flee or elude the police officer shall be guilty of a class G felony...."). Therefore, even if the jury believed that Valentin knew that a police truck approached him, that does not mean that the officers gave him a visual or audible signal to stop.

siren can be heard in the dispatch recording, however.[31] The siren's absence distinguishes this evidence from undisclosed evidence in cases such as *Taylor v. State,* where the defendant could not show any portion of the undisclosed evidence that would have assisted the defense.[32]

This is not a case where "significant evidence, independent of the [evidence giving rise to the discovery violation], was before the jury." [33] The State based its case-in-chief almost entirely upon Couch's and Davis's testimony, which described their pursuit and apprehension of Valentin. Evidence that the officers failed to activate their truck's siren would have allowed Valentin to attempt to impeach the officers' testimony regarding the entire pursuit.[34] While the officers also testified that they had activated the truck's emergency lights and yelled at the defendant, evidence that the truck's sirens were not activated might have led the jury to discount the officers' other testimony as well.

■ The remaining two factors provide little support to the State. While the State arguably had a strong case, the lack of material potentially impeaching the officers' testimony hamstrung Valentin's defense. The State's failure to respond to

Valentin's discovery request forced his attorney to engage in a credibility battle against two police officers without material that might cause the jury to question the officers' testimony. Finally, because the trial judge erroneously found no discovery violation, he failed to take any steps to mitigate the results of the error.[35]

The State's failure to produce the dispatch recording in response to Valentin's discovery request therefore prejudicially affected Valentin's substantial rights. Justice is best served by full and fair disclosure of discoverable information. The State's failure to do so here requires us to grant Valentin a new trial.

## IV. CONCLUSION

For these reasons, we REVERSE the Superior Court's judgment regarding the Failure to Stop at the Command of a Police Officer and Reckless Driving charges and REMAND for a new trial in accordance with this Opinion. Jurisdiction is not retained.

---

31. Valentin also noted that Davis's shouted order to stop cannot be heard on the dispatch recordings. The dispatch recordings are not continuous, however, so the absence of Davis's shouting is not notable.

32. *Taylor v. State,* 982 A.2d 279, 283–84 (Del. 2008) (dismissing the argument that the State's failure to produce the alleged victim's journal prejudiced the defendant because he could not show that any information within the journal would have assisted his defense).

33. *Oliver,* 60 A.3d at 1099 (alteration in original) (quoting *Fuller,* 2007 WL 812752, at *3) (internal quotation marks omitted). The State's reliance on the officers' testimony distinguishes this case from cases where we have

held that significant, independent evidence was before the jury. *E.g., Fuller,* 2007 WL 812752, at *3 (holding that the State's failure to produce the defendant's videotaped interrogation did not prejudice the defendant because both the victim and an independent eyewitness identified the defendant).

34. During his testimony, Valentin admitted to speeding, failing to stop at a stop sign, and entering the Horsey Pond Wildlife Area after sunset. He did not admit to driving recklessly.

35. A trial judge's failure to mitigate the results of a disclosure violation alone does not require reversal. *Fuller,* 2007 WL 812752, at *3.