IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHARLES H. GIFFORD, III, | § | |
| | § | No. 410, 2016 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| 601 CHRISTIANA INVESTORS, LLC, | § | C.A. No. N15J-03882 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: February 10, 2017
Decided:  March 27, 2017

Before **HOLLAND, VALIHURA** and **VAUGHN**, Justices.

## O R D E R

On this 27th day of March 2017, it appears to the Court that:

(1) Appellant, Charles Gifford, appeals from a Superior Court Order denying his Motion for Reconsideration of a Commissioner's Order finding that the Appellee, 601 Christiana Investors, LLC ("601 Christiana") had standing to enter a judgment by confession against Gifford, and that Gifford knowingly, voluntarily and intelligently waived his rights to notice and a hearing prior to the entry of judgment. Gifford makes four claims on appeal. He contends that: (1) he did not know of or consent to certain final loan modifications, which releases him from his guaranty and renders the judgment by confession void; (2) 601 Christiana lacks standing to bring the action because it is not a lender or financial institution within the meaning

of the loan documents; (3) 601 Christiana lacks standing because the assignment of the loan documents was invalid under Delaware Suretyship law; and (4) the Superior Court erred when it did not require or review findings of facts and conclusions of law by the Commissioner.

(2) On April 9, 2009 Peninsula Compost Company, LLC ("Peninsula") received a $5.5 million term loan and a $1 million line of credit from Wilmington Savings Fund Society, FSB ("WSFS") to finance the operation of a composting business in Wilmington. The Loan had five co-guarantors: Charles H. Gifford, III, Nelson Widell, Peninsula Compost Group, LLC, and two businesses operated by Brian DiSabatino and E. Andrew DiSabatino, Jr. – EDiS Development Group V, LLC and Crystal Holdings, Inc. According to the Term Loan Guaranty, the term loan guarantors each agreed that they were jointly and severally liable for the amount due under the term loan. The term loan guaranty also provided that it was freely assignable by WSFS. Throughout the loan process, the law firm of Richards, Layton & Finger acted as counsel to the borrower and co-guarantors, and rendered opinions in connection with the term loan and the line of credit from the lender.

(3) During a period from 2011 to 2014, the loan documents were modified by five separate modification agreements. The second modification agreement,

2

effective July 27, 2011, was the only modification that was fully executed by all parties.

(4) On October 20, 2014, the Delaware Department of Natural Resources and Environmental Control ordered Peninsula "to immediately cease the acceptance of any material to the facility and to initiate steps to implement an orderly closure."[1] About eight months later, in June 25, 2015, WSFS sent a letter to Peninsula's operating manager and the co-guarantors reminding them of the loan's maturity date, June 30, 2015. Peninsula had outstanding obligations of more than $4.8 million under the loan and more than $900,000 under the line of credit.

(5) Subsequently, on June 29, 2015, WSFS entered into a Loan Sale Agreement under which 601 Christiana purchased the Term Loan and Line of Credit for almost $5.8 million. Under the documents executed in connection with the purchase, WSFS assigned all of WSFS' rights under the Term Loan to 601 Christiana.

(6) The loan's maturity date then passed without any payment on the term note, at which point 601 Christiana[2] sent a letter to Peninsula and the guarantors

---

[1] App. to Appellant's Opening Br. at 88-93.

[2] 601 Christiana Investors, LLC is a company created by Brian DiSabatino and Andrew DiSabatino, who are brothers affiliated with two of the co-guarantor companies on the Term Loan and Line of Credit – EDiS Development Group V, LLC and Crystal Holdings, Inc. Andrew DiSabatino is the president of Crystal Holdings and the manager of EDiS Development Group.

notifying them of the default under the loan documents and demanding payment of the amounts due under the loans. The term loan guaranty provided that the Lender was not required to first pursue the borrower following an event of default. Additionally, the term loan guaranty and the term note both contained a conspicuous provision in all capital letters that provided for the entry of judgment by confession against each and any of the term loan guarantors. Because Gifford and Widell were not residents of Delaware, they also executed sworn affidavits under oath pursuant to 10 *Del. C.* §2306 stating that the "undersigned has been represented by a duly licensed Delaware attorney, who explained the contents of this confession of judgment provision to the undersigned."[3]

(7) 601 Christiana did not receive payment under the loans and proceeded to enter judgment by confession against the individual guarantors – Gifford and Widell – under the term note in the amount of $4,858,238.99. Gifford and Widell challenged the actions, "contending that 601 Christiana was not a proper assignee and therefore lacked standing to enforce the guaranty agreement against them."[4] The court below permitted the parties to conduct discovery relating to the issue of standing and the issue of waiver of the right to notice and a hearing prior to entry of

---

[3] App. to Appellant's Opening Br. at 55-56.
[4] Appellant's Opening Br. at 12.

4

judgment. The confession of judgment proceeding against Widell was stayed when he filed for bankruptcy; however the case against Gifford proceeded.

(8) On February 22, 2016, a Superior Court Commissioner held a hearing to address the issues of (1) Gifford's waiver of his rights in connection with the confession of judgment and (2) whether language in Section 6.6 of the Business Loan Agreement affected the plaintiff's standing. The Commissioner ruled from the bench on both issues. The Commissioner ruled that Gifford knowingly, intelligently, and voluntarily waived his rights. He found that Gifford was a lawyer and a "sophisticated businessman," who entered into the documents with advice from counsel, and that Gifford "consulted with a lawyer and had [the] items explained to him."[5] The Commissioner further ruled that the documents were clear - the confession-of-judgment language was bold, highlighted, and clearly spelled out what would happen upon default. Therefore, there was no ambiguity as to the language of the agreement. Consequently, the Commissioner ruled that the "standard [had] been met to show that there was a knowing, intelligent, voluntary waiver of the confession of judgment."[6]

(9) Section 6.6 of the Business Loan Agreement contained language indicating that WSFS could assign the loan documents to any "lenders or financial

---

[5] App. to Appellant's Opening Br. at 344.
[6] *Id.* at 345.

5

institutions."[7] As to whether or not this language affected 601 Christiana's standing to enter judgment by confession, the Commissioner ruled that Section 6.6 was not ambiguous and did not place a limitation on the lender's right to assign the loan documents to any successors or assigns. Rather, Section 6.6 placed an obligation on the borrower "to ensure that somebody who finances or buys those documents down the road, that the borrower . . . will sign them and that's clear."[8] Furthermore, the Commissioner found that "the other documents that were signed . . . ma[d]e it abundantly clear that there's absolutely no limitation on assigning the loan here on successors and assigns."[9] The assignment language was clear, unambiguous, and there was not "a limitation which denies the bank, or which denies 601 Christiana Investors' standing to move for the confession of judgment."[10] Therefore, the Commissioner found that 601 Christiana had standing to bring the action.

(10) Gifford proceeded to file a Motion for Reconsideration of the Commissioner's order. Gifford objected to the entry of a case dispositive Order by the Commissioner pursuant to Superior Court Civil Rule 132(a)(3), arguing that the order should have been addressed under Rule 132(a)(4).[11] The Superior Court

---

[7] *Id.* at 30.
[8] *Id.* at 345.
[9] *Id.*
[10] *Id.* at 346.
[11] *Id.* at 350-51.

6

denied the motion by order dated July 12, 2016. The Superior Court ruled that the Commissioner had the authority to conduct both case-dispositive and non case-dispositive hearings according to Superior Court Civil Rule 132. Furthermore, the court ruled Gifford did "not object to the Commissioner's factual determination that Gifford waived his rights regarding the confession of judgment freely, knowingly and voluntarily, nor does he object to the Commissioner's legal conclusion that 601 Christiana had standing to bring this action."[12] The court ruled that regardless of whether the Commissioner determined "a case-dispositive matter or a non-case dispositive matter," Gifford was not entitled to relief.[13] The court went on to treat the matter as non-case dispositive and applied the standard of review required by Rule 132(a)(3)(iv) and found that Gifford's motion failed. The court also reviewed the matter as case-dispositive, and applied the *de novo* standard of review, also finding that Gifford's motion failed and the Commissioner's order must be affirmed. This appeal followed.

(11) This Court reviews "questions of contract interpretation *de novo*."[14] "Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable

---

[12] Appellants Opening Br., Ex. B at 5.
[13] *Id.*
[14] *Salamone v. Gorman*, 106 A.3d 354, 367 (Del. 2014).

7

third party."[15] "When interpreting a contract, this Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions."[16] Furthermore, "a court must determine the intent of the parties from the language of the contract."[17]

(12) Gifford contends that "601 Christiana lacks standing to pursue a confession of judgment" under the Loan Documents. He contends that "WSFS' underlying assignment of the Loan Documents to 601 Christiana was void given the fact that 601 Christiana is not a lender or financial institution" as described in Section 6.6 of the Loan Agreement, and therefore 601 Christiana was "ineligible to be an assignee under the Loan Documents."[18] Gifford's claim lacks merit. The language of Section 6.6 of the Business Loan Agreement does not limit the right to assign the loan to 601 Christiana. Section 6.6 states:

> 6.6 <u>Successors and Assigns.</u> The provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, except that Borrower may not assign or otherwise transfer any of its rights under this Agreement without the prior written consent of the Lender. Lender may negotiate, assign, pledge or transfer for short-term or permanent financing, the Note, the Mortgage and all other Loan Documents to any lenders or financial institutions

---

[15] *Id.* at 367-68.

[16] *Id.* at 368 (quoting *GMG Capital Inv., LLC. v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012).

[17] *Id.*

[18] Appellant's Opening Br. at 26.

and Borrower agrees to execute such documents as may be necessary to effectuate such assignment, pledge or transfer. In the case of such assignment, pledge or transfer, the rights and remedies of Lender in connection with the interest so assigned shall be enforceable against the Borrower by such lenders or financial institutions with the same force and effect and to the same extent as the same would have been enforceable by Lender but for such assignment or pledge or transfer.[19]

(13) The Term Note Guaranty states:

2. Nature of Obligation. This Guaranty is entered into and upon the following terms and conditions:

(b) The Guarantor expressly agrees that Lender may, in its sole and absolute discretion, without notice to or further assent of the Guarantor and without in any way releasing, affecting or impairing the obligations and liabilities of Guarantor hereunder . . . (ii) *assign or otherwise transfer the Note, this Guaranty, any other Loan Document, or any interest therein or herein . . .*

\* \* \*

10. Binding Nature. This Guaranty shall be unconditionally binding upon Guarantor and its successors and assigns, and shall inure to the benefit of Lender, *its successors and assigns, and any future holder of the Note.*[20]

---

[19] App. to Appellee's Answering Br. at 168.

[20] *Id.* at 141-142, 144 (emphasis added).

9

(14) Additionally, the language of the Promissory Note specifically allows for the assignment of WSFS to any entity and does not contain any limiting language:

> 26. <u>Assignment; Successors and Assigns.</u> This Note *may be assigned at any time by the Lender*, but it shall not be assigned by the Borrower without the prior written consent of the Lender, its successors or assigns, which consent may be withheld for any reason. All of the terms and conditions herein shall be binding upon any successors and assigns of the Borrower and inure to the benefit of the Lender, its successors and assigns.[21]

(15) The Commissioner ruled that Section 6.6 was not ambiguous and does not place a limitation on the lender. He found that "the other documents that were signed in connection with [the] agreement make it abundantly clear that there's absolutely no limitation on assigning the loan here on successors and assigns."[22] The Commissioner concluded that "when you look at [Section 6.6] in context and when you read it, it's not a limitation on the bank's ability to assign the documents to only a lender or a financial institution . . . there's no ambiguity, and it's not a limitation which denies the bank, or which denies 601 Christiana Investor's standing to move for the confession of judgment."[23] In reviewing Gifford's motion to vacate the Commissioner's order, the Superior Court applied the *de novo* standard of review

---

[21] *Id.* at 135 (emphasis added).

[22] *Id.*

[23] App. to Appellant's Opening Br. at 346.

10

and found that "the business loan agreement permitted the original lender to assign the loan to 601 Christiana, again for the same reasons as the Commissioner did."[24]

(16) We agree with the Superior Court that when all the documents are read in context, WSFS was not restricted to assigning the loan documents only to a lender or financial institution. The decision of the Commissioner, which was adopted by the Superior Court, should be affirmed.

(17) Gifford contends that the Superior Court "erred when it did not require or review findings of facts and conclusions of law by the Commissioner" because the Commissioner issued a case-dispositive decision.[25] This Court reviews a trial judge's interpretation of its procedural rules *de novo*.[26]

(18) Gifford's claim lacks merit. With either case-dispositive or non case-dispositive matters decided by a Commissioner, a party may request that a judge review the matter.[27] The Superior Court noted that "[w]hether the Commissioner determined a case-dispositive matter or non case-dispositive mater is not a question the Court needs to resolve. In either circumstance, Gifford is not entitled to relief."[28] However, the Superior Court still undertook a complete and independent analysis of

---

[24] Appellant's Opening Br., Ex. B at 8.

[25] Appellant's Opening Br. at 40.

[26] *Valentin v. State*, 74 A.3d 645, 648 (Del. 2013).

[27] Super. Ct. Civ. R. 132(a)(3)(ii) and (a)(4)(ii).

[28] Appellants Opening Br., Ex. B at 5.

11

the record and reached its own conclusions. The Superior Court applied both the standard of review required by Superior Court Civil Rule 132(a)(4)(iv), for non case-dispositive matters, and the *de novo* standard of review, for case-dispositive matters.[29] Under both standards of review, the Superior Court ruled that Gifford's Motion failed.[30]

(19) The Superior Court noted that Gifford did not actually object to the Commissioner's factual determinations and legal conclusions, but instead argued that the Commissioner should have treated the matter as case-dispositive and filed proposed findings of fact and recommendations as required under Superior Court Civil Rule 132(a)(4)(i). The Superior Court ultimately treated Gifford's Motion to Reconsider as it would an appeal from the Commissioner's findings of fact and recommendations and applied the *de novo* standard of review to the Commissioner's bench ruling. The Superior Court noted that there would be no point in "remanding the matter back to the Commissioner for the purpose of having him recast his findings of fact and disposition as proposed findings of fact and recommendations for disposition."[31] Because the Superior Court judge reviewed the Commissioner's

---

[29] *Id.* at 5, 8.
[30] *Id.*
[31] *Id.* at 7.

12

ruling under the case-dispositive standard of review, Gifford's claim fails and the Superior Court must be affirmed.

(20) Gifford raises two arguments that were not fairly presented to the trial court. This Court reviews issues that are not fairly presented to the court below, under the plain error standard of review.[32] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[33] "Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[34]

(21) First, Gifford argues that "he did not know of nor consent to the final loan modifications which releases him from his guaranty and renders the confession of judgment void."[35] Second, Gifford contends that "601 Christiana lacks standing because the assignment is invalid under Delaware suretyship law."[36] Neither of

---

[32] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[33] *Id.*
[34] *Id.*
[35] *Id.* at 16.
[36] *Id.* at 33.

13

these arguments were fairly presented to the trial court and are therefore waived on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.** The time for filing a motion for reargument is shortened to three days.[37]

BY THE COURT:

_____
Justice

---

[37] Supr. Ct. R. 4 and 18.