IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ABDUL WHITE, | § | |
| | § | No. 210, 2018 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1508010489 (K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: January 16, 2019
Decided: February 19, 2019

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## ORDER

This 19th day of February, 2019, having considered the briefs and the record below and oral argument, it appears to the Court that:

(1)  After a two-week trial, a Superior Court jury convicted Abdul White of murder first degree and lesser charges after he and two associates broke into a home, held those inside captive, and killed John Harmon in pursuit of drugs believed to be in Harmon's home.  On appeal, White argues the Superior Court erred by (1) not granting a mistrial after alleged *Brady*[1] evidence surfaced, (2) denying defense requests during the trial to order the State to produce documents and information,

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

and (3) allowing the State to introduce into evidence White's tattoo which read "Duct Tape Bandit." After a careful review of the record, we find that the trial court acted within its discretion on each issue and affirm White's convictions.

(2) On August 8, 2015, White and two other masked and armed men broke into John Harmon's home and restrained all eleven occupants. White's wife drove the three men to the house. White and his associates believed Harmon had a large amount of marijuana at the house. White ordered his accomplices to restrain the occupants with duct tape. White then allegedly interrogated and tortured Harmon trying to find the hiding place for the marijuana. Eventually, Harmon was shot and the three men fled the house without finding any drugs.

(3) The five adult witnesses who testified described the man who shot Harmon as substantially larger than the other two and wearing a helmet.[2] The helmet had a light duct-taped to it and was found in Harmon's house with White's fingerprint on it.[3] One witness also identified the shooter as having a tattoo on his face—which White also has.[4]

(4) At trial White testified that he was in the house, but not the person who shot Harmon. White also claimed that he participated in the crime under duress. According to White, Kevin McDonald, Sr.—White's cousin—led a criminal

---

[2] App. to Answering Br. at B10-19 (Trial Tr.).
[3] *Id.* at B32.
[4] *Id.* at B5.

2

operation which included White. White claimed to fear for his life if he did not aid McDonald because White owed him $20,000.

(5) During the trial White's counsel noted that Khalil Baines, one of the men with White during the robbery, had given a two-and-a-half-hour statement to the police, largely related to the robbery, that was not provided to White. White argued that the statement was *Brady* evidence and also a statement by a co-defendant—both of which should have been disclosed to the defense. The court accepted the prosecutor's statement that nothing in the statement was exculpatory, but ordered it produced as arguably a co-defendant's statement. The court gave White a few days to review the tape before continuing the trial. The Superior Court denied White's request for a mistrial, noting that White had not alleged any substantial prejudice and there was no evidence of prosecutorial bad faith.[5]

(6) Upon resumption of the trial, White requested that the State be ordered to produce the probable cause affidavit attached to a search warrant request for Baines' DNA, and a sample of the DNA itself. The trial court refused because the DNA was sought for a separate drug case involving Baines, and the State had not compared Baines' DNA to any DNA found in Harmon's home.

(7) During trial the State sought to introduce evidence of the tattoo on White's stomach reading "Duct Tape Bandit" in a motion in limine. White opposed

---

[5] App. to Opening Br. at A86-87 (Trial Tr.).

the motion, claiming the tattoo was inadmissible hearsay and the State was improperly using it as prejudicial character evidence. The Superior Court admitted the tattoo because it was a party admission, duct tape was used at the crime scene, and the risk of prejudice did not substantially outweigh its probative value.[6]

(8) After trial but before the verdict, the State received information of threats made against White after he testified. The Superior Court denied White's requests for details about the threats. It found that the information came too late for White to use in his defense and a late-2017 threat would have limited relevance to a 2015 murder. The Superior Court jury convicted White of murder first degree and various lesser offenses. He was sentenced to life imprisonment for murder and over a hundred years for the litany of other charges.

(9) A few months after trial, White became aware of misconduct by Carl Rone, the State's ballistics expert, and sought discovery of information about the charges that resulted in his legal troubles. The Superior Court ruled that because the State was not aware of any problem until about two months after the trial ended, Rone's report was admitted jointly, and Rone did not testify, the State did not have to provide further information.

(10) On appeal, White argues that the Superior Court should have required the State to produce its search warrant affidavit for Baines' DNA and the DNA itself

---

[6] *State v. White*, 2017 WL 3084711, at *2 (Del. Super. July 20, 2017).

because they might have been relevant to the crime scene evidence in the murder case. The State argues in response that the State collected Baines' DNA for an unrelated drug investigation that had nothing to do with the Harmon murder. We review the Superior Court's denial of the request for abuse of discretion.[7]

(11) We agree with the Superior Court that the affidavit of probable cause and search warrant application for a DNA sample and the sample itself did not have to be produced. The State requested the sample in an unrelated case. Further, the State did not conduct a DNA comparison between Baines' DNA and DNA from the murder scene. Thus, the information was irrelevant to the murder trial.

(12) White also argues that the Superior Court should have required the State to disclose information relating to threats against White after he testified at trial. White claims he could have used the evidence during trial. The State responds that the information could not have been used at trial because it did not come to light until after the case went to the jury. We find that the Superior Court did not err in denying the request. As the court properly observed, a threat made in 2017 was irrelevant to a 2015 duress defense.

(13) Next, White contends the court erred in not ordering production of any evidence related to the ballistics expert's discipline and resignation from State employment. We agree with the Superior Court, however, that the State did not

---

[7] *Valentin v. State*, 74 A.3d 645, 648 (Del. 2013).

know of information related to Rone's alleged misdeeds until over two months after White was convicted. More to the point, Rone did not testify in the murder trial and his report was admitted after a joint stipulation of admissibility between the State and the defense.

(14)    White also argues that the trial court should have granted a mistrial after the State produced Baines' statement, instead of granting White four additional days to review the statement and respond.  We review the denial of a motion for mistrial for abuse of discretion.[8] The State does not appear to dispute that White was entitled to the video as a co-defendant's statement, but notes that White does not argue any specific prejudice. We agree with the State that the delay in trial cured any prejudice by the late disclosure. Further, Baines' statement did not include any exculpatory statements to support White, White had four days to prepare before having to resume trial, and White was probably aware of the statement prior to trial.[9]

(15)    White suggests that earlier knowledge of the statement would have helped him "determine how to appropriately use that evidence, what witnesses to call, and how to conduct cross examination of all witnesses, including not being deceived by the chief investigating officer."[10] But, after receiving the statement,

---

[8] *Michaels v. State*, 970 A.2d 223, 229 (Del. 2009).
[9] App. to Opening Br. at A211 (Letter to Matthew Buckworth from Lindsay Taylor); App. to Answering Br. at B48 (Trial Tr.).
[10] Opening Br. at 23.

White did not request more time to call a different witness, did not try to recall the chief investigating officer to the stand, or make any similar requests. White has not identified any prejudice he suffered following production of the statement.[11]

(16)   Finally, White argues that the Superior Court erred in admitting his "Duct Tape Bandit" tattoo because it was prohibited character evidence, hearsay, and any probative value it had was substantially outweighed by the risk of prejudice. The State responds that the tattoo is relevant because duct tape was used extensively in the home invasion, the tattoo helped identify White as the robber using duct tape, and the tattoo was self-explanatory.[12]  Further, according to the State, the tattoo was not hearsay because it was an admission by a party opponent.

(17)   The Superior Court did not abuse its discretion in admitting the tattoo. The tattoo qualified as a statement made by, or adopted by, White.  A statement made by, or adopted by, a party opponent is admissible as non-hearsay.[13]  The State's use of the tattoo was also not improper as evidence of a prior crime, wrongdoing, or act under D.R.E. 404(b).  In *Watson v. State*[14] we recently dealt with a similar issue

---

[11] White also argued that the four issues above, cumulatively, constituted error sufficient to mandate a mistrial.  As discussed above, however, none of the actions of the Superior Court were outside its discretion.  And even taken cumulatively White has not alleged any substantial prejudice.  *See Michaels v. State*, 970 A.2d 223, 231 (Del. 2009) (finding no cumulative error where the defendant has not shown any substantial prejudice).

[12] The State suggests "it means that he robs people and utilizes duct tape to facilitate his crimes." Answering Br. at 23.

[13] *See* D.R.E. 801(d).

[14] 2015 WL 1279958, at *2 (Del. Mar. 19, 2015) (TABLE).

of a tattoo purportedly representing a criminal act. This Court found that a tattoo of "187," believed to represent the crime of killing a police officer, was sufficient evidence of intent to be admissible and not run afoul of D.R.E 404(b). Finally, under D.R.E. 403 any prejudice by admission did not substantially outweigh its probative value. During the murder, the house occupants and the victim were restrained with duct tape at White's order, and White's helmet with his fingerprint had a light duct-taped to the top. The tattoo helped identify White as the robber who used duct tape and committed the murder. Thus, the Superior Court did not abuse its discretion by admitting the tattoo into evidence.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

8