IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TAJIIR PATTERSON, | § | |
| | § | No. 265, 2021 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below - Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID No. 1812009146 (N) |
| Appellee. | § | |

Submitted: March 9, 2022
Decided: May 3, 2022

Before **SEITZ**, Chief Justice; **VALIHURA** and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Elliot Margules, Esquire, OFFICE OF THE PUBLIC DEFENDER, Wilmington, Delaware; *for Appellant Tajiir Patterson*.

Matthew C. Bloom, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; *for Appellee State of Delaware*.

**MONTGOMERY-REEVES**, Justice:

This appeal arises from a discovery dispute regarding the scope of disclosure mandated by Superior Court Criminal Rule 16. In a bench trial beginning on March 12, 2020, the Superior Court found Appellant, Tajiir Patterson, guilty of invasion of privacy for filming a sexual encounter with D.L.[1] and distributing the video over social media without her consent. On August 6, 2020, the court sentenced Patterson to two years at Level V incarceration, suspended for twelve months at Level III probation.

As part of the investigation, the New Castle County Police extracted data, including over 9,000 photos, from D.L.'s cell phone. Patterson's counsel was permitted to inspect these photos. The encounter occurred in late 2017, and nearly three years passed between the time of the recording and the trial. Because D.L.'s appearance had changed significantly during that time, the State sought to introduce Photo 1 into evidence to show her appearance at the time of the recording. Patterson's counsel objected because Photo 1 was not disclosed in discovery. The trial judge sustained the objection, ruling that photos not disclosed in discovery would be inadmissible, but photos contained within the cell phone extraction would be admissible. The State then sought to introduced Photo 2 into evidence, which was of D.L. from 2017 and was included in the cell phone extraction. Patterson's counsel objected. Photo 2 was admitted into evidence.

---

[1] While D.L. is now an adult, she was a minor at the time the video was circulated; therefore, in an abundance of caution, we use her initials consistent with Supreme Court Rule 7(d).

Patterson seeks reversal of his conviction, contending that the State violated its discovery obligations by not flagging the importance of the 2017 photos of D.L. and by not providing a copy of all the photos in D.L.'s phone. Patterson argues that the trial court abused its discretion by allowing Photo 2 into the record given the State's alleged discovery violation. We affirm the conviction because the State did not violate its discovery obligation and thus the trial court did not abuse its discretion in admitting Photo 2 into evidence.

## I.      RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.      The Encounter and Social Media Postings

Patterson and D.L. became friends while attending Hodgson Vocational Technical School together.[2] Patterson was also a friend of D.L.'s older brother.[3] In the summer and fall of 2017, D.L. had a relationship with a classmate; however, their relationship was tumultuous and contributed to D.L.'s severe depression and admission into Rockford Center for approximately one month in October 2017.[4] After the inpatient stay, D.L. participated in outpatient treatment and was placed on antidepressant medication.[5] D.L. ended her relationship with her classmate and began communicating with Patterson on Snapchat.[6]

---

[2] App. to Opening Br. 40 (hereinafter, "A__").
[3] A41.
[4] A45-46; *see* A45 at 32:11-16.
[5] A45, 55.
[6] A48-49.

3

Patterson and D.L. then saw each other at Patterson's house alone approximately ten times.[7] During these times they went on walks, smoked marijuana, and had sex.[8]

In late November or early December 2017, Patterson and D.L. met up at D.L.'s house. Despite being on medication for depression, D.L. and Patterson smoked marijuana[9] and drank vodka.[10] Patterson and D.L. then had sex.[11] D.L.'s memory of the sexual encounter was impaired because of the drugs and alcohol.[12] She recalled sexual positions and details of the bedroom.[13] She remembered seeing a flash and that the television was on during the encounter.[14] D.L. was not aware that Patterson was recording the encounter; the two had never recorded each other or taken photographs during past encounters.[15] After that night, D.L. had little contact with Patterson and eventually deleted him from her contacts.[16] Afterwards, D.L. resumed her relationship with her classmate, but they broke up again after D.L. informed him of her encounters with Patterson.[17]

On April 2, 2018, Patterson posted a video of himself having sex with an African American female on Snapchat with the caption "Happy Monday."[18] A mutual friend of

---

[7] A50.
[8] A50-51.
[9] A54-59.
[10] A56-57, 57 at 44:21-22.
[11] A58.
[12] A58-59.
[13] *Id*; A82.
[14] A83.
[15] A89.
[16] A61.
[17] A65-66.
[18] A80-81, 196-197.

Patterson and D.L. noticed the video and shared it on his own Snapchat feed.[19] He recognized Patterson but not D.L., as her face was not visible in the video.[20] Patterson noticed that the friend shared the video; when Patterson inquired why, the friend responded that "[he] just had to grab it."[21] Patterson approved and asked the friend to repost it.[22]

By the time the friend reposted it, other students had already seen the video and were talking about it.[23] D.L. was not in school that day.[24] While lying in bed, she saw Patterson's video on the friend's Snapchat feed; once she watched the video, she recognized herself.[25] She recognized distinctive characteristics of her own body, including unique stretch marks, "popped" veins, and the particular shape of her stomach.[26] She also recognized the sound of her own voice "whimpering"[27] and had no doubt it was her.[28]

D.L. contacted the friend, informed him that she was the person in the video, and asked him to remove the video, which he did.[29] The friend then asked Patterson if D.L. was the female in the video. Patterson denied that it was D.L. and claimed it was an older unnamed woman.[30]

---

[19] A199-200.
[20] A198.
[21] A200-01.
[22] A202-03.
[23] A204.
[24] A62-63.
[25] A87-89, 138.
[26] A88 at 75:1-3, 87-89, 125, 145-46, 153-54.
[27] A114, 117 at 104:16-18.
[28] A117.
[29] A76-77.
[30] A210, 213.

D.L. was shocked and humiliated by the video. She eventually showed the video to her guardian.[31] The guardian testified that after the incident, D.L. cried more, was angrier, and instigated more fights with siblings.[32] The guardian convinced D.L. to report the incident, after which police executed a search warrant of Patterson's home for cell phones, pictures, and bed sheets.[33]

## B.     The Phone Extraction and Discovery

On July 1, 2019, Patterson's counsel sent a discovery request to the State.[34] Counsel requested "[n]otice of . . . any and all displays the State intends to present to the finder of fact during . . . a witness's testimony."[35] On October 28, 2019, the State responded to the request and filed a supplemental discovery response on March 3, 2020.[36]

The police had collected D.L.'s cell phone and extracted its contents.[37] The police also collected and extracted data from Patterson's phone. The extractions of D.L.'s phone and Patterson's phone were made available for inspection at the beginning of the case. Closer to the trial, the State and defense counsel discussed a time for defense counsel to

---

[31] A79.
[32] A179-80.
[33] A86, 232-34.
[34] A9-11.
[35] A10 at II.K.
[36] A3 at D.I.15.
[37] A228-29. The extraction also included all text messages, call history, contact list, and web searches on the phone. A231 at 45:8-9. It does not include information on apps unless such information is saved to the phone. *See* A232.

review that evidence.[38]   Patterson's counsel reviewed the extraction at the New Castle County Police Department.[39]   Patterson's counsel asserted that the review of the extracted material included over 9,000 images.[40]   Further, Patterson's counsel acknowledged the State acted "appropriately" by not copying and transmitting the contents of the minor victim's cell phone in discovery due to her age.[41]

### C.    The March 2020 Bench Trial

Patterson waived his right to a jury trial, and a two-day bench trial occurred on March 12, 2020, and March 13, 2020.[42]   Patterson's counsel acknowledged in his opening statement that the identity of the female in the video would be the central issue to the case.[43]

D.L.'s appearance had changed significantly in the three years since the incident.[44]   D.L. had gained approximately thirty pounds and changed her hair.[45]   D.L. testified extensively about details of her body, as well as changes to it, but the State also attempted to admit a photo of D.L. taken around the time of the incident in 2017 ("Photo 1"). [46]   Photo 1

---

[38] A100, 103.
[39] A104.
[40] Opening Br. 7.
[41] A104 at 91:3-10 ("Because of the sensitivity of evidence found on any cell phone, but especially the cell phone of a young girl, the State, I think, appropriately didn't give me the cell phone. . . .").
[42] A15-16.
[43] A32-35.
[44] A105-107.
[45] *Id.*
[46] A89.

was not disclosed in discovery because the State did not receive Photo 1 until the evening before trial.[47] Defense counsel objected to the admission of Photo 1.[48]

The Superior Court sustained Patterson's objection and excluded Photo 1 from evidence. [49] "[L]ooking at the totality of the circumstances," the trial judge ruled, "[I]f it's not – and it appears that it's not part of the cell phone dump, I'm not allowing it. To the extent you have other pictures that show us her hairstyle or how she looked, I guess, that is part of the dump, I'll allow that."[50]

The court took a recess, and while on recess, the State reviewed the extraction.[51] The State located and submitted another photo depicting D.L. in late 2017 that was included in the extraction ("Photo 2").[52] Patterson also objected to Photo 2, arguing that the State's production of the cell phone extraction did not constitute a "meaningful disclosure" under Rule 16 because of its size and defense counsel's access to it.[53] The trial judge overruled the objection and admitted Photo 2 into evidence.[54]

On March 16, 2020, the trial judge found Patterson guilty of one count of invasion of privacy in violation of 11 *Del. C.* § 1335(a)(9). On August 6, 2021, the court sentenced

---

[47] A92.
[48] A90-91.
[49] A100. Patterson later offered Photo 1 into evidence to rebut the admission of Photo 2. A165-166.
[50] A100.
[51] A101.
[52] *Id.*
[53] A103-104.
[54] A104.

Patterson to two years at Level V incarceration, suspended for 12 months at Level III probation.[55] Patterson then filed a timely notice of appeal.

## II. STANDARD OF REVIEW

"We review a trial judge's interpretation of the Superior Court Rules of Criminal Procedure relating to discovery *de novo,* and we review the trial judge's application of those Rules under an abuse of discretion standard."[56]

## III. ANALYSIS

In evaluating alleged discovery violations, this Court conducts a two-step inquiry. First, the Court must determine if a violation of Superior Court Rule 16 occurred.[57] If no violation occurred, the inquiry ends.[58] If the Court concludes a discovery violation has occurred, the Court applies a three-factor test that considers "(1) the centrality of the error to the case; (2) the closeness of the case; and (3) the steps taken to mitigate the results of the error."[59] "We 'will reverse only "if substantial rights of the accused are prejudicially affected."'"[60]

---

[55] Opening Br. Ex. C at 1.
[56] *Valentin v. State*, 74 A.3d 645, 648 (Del. 2013) (citing *Hopkins v. State*, 893 A.2d 922, 927 n. 5 (Del. 2006)).
[57] *Wharton v. State*, 246 A.3d 110, 116 (Del. 2021) (citing *Valentin*, 74 A.3d at 648-49).
[58] *Wright v. State*, 25 A.3d 747, 753 (Del. 2011).
[59] *Oliver v. State*, 60 A.3d 1093, 1096-97 (Del. 2013); *see also Secrest v. State*, 679 A.2d 58, 64 (Del. 1996) (quoting *Skinner v. State*, 575 A.2d 1108, 1126 (Del. 1990)); *Fuller v. State*, 922 A.2d 415 (Del. 2007).
[60] *Oliver*, 60 A.3d at 1097 (quoting *Fuller*, 922 A.2d at 415); *see also Valentin*, 74 A.3d at 648 (citing *Hopkins*, 893 A.2d at 927 n.5); *Johnson v. State*, 550 A.2d 903, 909-14 (Del. 1988).

Rule 16 of the Superior Court Rules of Criminal Procedure requires the State to provide a defendant access to certain information upon that defendant's request.[61] Rule 16(a)(1)(C) defines the State's discovery duties relating to documents and tangible objects:

> Upon request of the defendant the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant.[62]

This rule imposes an obligation to look for discoverable evidence and a continuing responsibility to disclose the existence of such evidence.[63]

Patterson contends that the State violated its discovery obligations under Rule 16 by providing a vast number of photos for inspection without telling counsel the significance of the photos (i.e., the State's litigation strategy) and without identifying which of the photos the State would use as trial exhibits. Patterson argues that because he did not know the relevance of the photos to the case, he had no real means of identifying relevant materials for his defense. Further, once Patterson realized the relevance of the photos at trial, his counsel did not have a copy of the photos available for review. Patterson argues that created an

---

[61] *See Skinner*, 575 A.2d at 1126; Super. Ct. Crim. R. 16(a)(1)(C).
[62] Super. Ct. Crim. R. 16(a)(1)(C).
[63] *See Skinner*, 575 A.2d at 1126; Super. Ct. Crim. R. 16(a)(1)(C).

"entirely imbalanced process in which the State had easy and unlimited access to important time-consuming evidence."[64]  We find these arguments unpersuasive.

First, Patterson concedes he was granted full access to the cell phone extraction of both D.L and his own cell phones.[65]  Patterson's counsel had just under five months to review the photos and videos from D.L.'s phone, which Patterson's counsel did at the New Castle County Police Headquarters.[66]  The photos were organized chronologically, and the software utilized by police to extract the data from cell phones provided a "timeline" report making it even simpler to navigate.[67]  Patterson also acknowledges that the State acted "appropriately" by not transmitting the entire contents of the minor victim's cell phone in discovery due to her age.[68]  And Patterson admits that he was not denied any request to copy any particular photograph.[69]

Second, Patterson was aware of the timeframe of the encounter with the person in the video.  Patterson knew both when he recorded the video and when he posted it on Snapchat. This created a "logical timeframe to explore in reviewing the material."[70]

---

[64] Opening Br. 17.
[65] A104.
[66] A3; *see also* A103.
[67] A231, 240 at 54:2-7.
[68] A104 at 91:3-10 ("Because of the sensitivity of evidence found on any cell phone, but especially the cell phone of a young girl, the State, I think, appropriately didn't give me the cell phone. . . .").
[69] Reply Br. 5.
[70] *See Wharton*, 246 A.3d at 118.

Third, the State and Patterson knew that the central issue in this case was the identity of the female in the video. Thus, evidence of D.L.'s appearance at the time of the alleged crime would have been highly relevant to the State's case. Patterson had actual notice of this, as is demonstrated by his opening statement to the court.[71]

Fourth, even if Patterson did not have a logical timeframe to work from, did not have almost five months to review the photos, and was unaware that the identity and appearance of D.L. in 2017 would be central to a case where the entire case turned on this very issue, Patterson sought no remedial action from the court once these facts became clear (other than the exclusion of the photo). There is no record that Patterson sought more time to review the discovery; nor did Patterson request a recess during the bench trial to investigate Photo 2 or other photos from the same timeframe. Patterson argues that it is unfair that the State had the extraction in its possession and Patterson did not, but the record shows that Patterson was given ample opportunity to review the full extraction; Patterson did not ask for more time before or during the trial; and Patterson did not request that the court order the State to provide a copy of the extraction for review by his counsel.

Finally, Delaware law does not require the State to review the discovery for the defendant and provide CliffsNotes.[72] Rule 16 requires that the State allow a defendant to inspect and copy or photograph photographs that the State controls or possesses, are material

---

[71] A32-35.
[72] *Wharton*, 246 A.3d at 118.

to the preparation of the defendant's defense, are intended for use by the State as evidence in chief at the trial, or were obtained from or belong to the defendant.[73] Patterson does not allege that the State failed to make relevant evidence admitted at trial available for inspection. Patterson does not allege that the State denied any request to copy any particular photograph or other item. And Patterson does not accuse the State of engaging in bad-faith misconduct by inundating Patterson with irrelevant, non-responsive materials. Thus, the State complied with this discovery obligation under Rule 16.

Because the State did not violate its discovery obligations, the Superior Court did not abuse its discretion by admitting Photo 2 into evidence.

## IV.    CONCLUSION

After careful consideration of the parties' briefs and the record on appeal, this Court AFFIRMS the judgment of the Superior Court.

---

[73] *See* Super. Ct. Crim. R. 16(a)(1)(C).