# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        :
                                  :
                                  :     ID Nos. 2303005845
                                  :               2302015372
       v.                        :
                                    :
                                    :
THOMAS PONZO,          :
                                    :
        Defendant.        :

Submitted: July 21, 2023
Decided:   September 5, 2023

## **OPINION**

Kevin B. Smith, Deputy Attorney General, and Georgia C. Pham, Deputy Attorney General, DEPARTMENT OF JUSTICE, Dover, Delaware, *Attorneys for the State of Delaware*.

Tasha M. Stevens-Gueh, Esquire, ANDREW & STEVENS-GUEH, LLC., Georgetown, Delaware, *Attorney for the Defendant*.

**Clark, R.J.**

Defendant Thomas Ponzo seeks Court approval to record grand jury witness testimony. In support, he cites two Delaware rules of criminal procedure that conflict. One rule permits the recording of grand jury proceedings only by court order. The other rule, which is Delaware's version of the *Jencks* Rule, requires the State to produce any *recorded* grand jury witness testimony if the same witness later testifies at trial or in an evidentiary hearing. The conflict between the two arises because the Superior Court does not permit such recording. In fact, the Court has not exercised its discretion to approve a request to record grand jury proceedings since it adopted both rules in their current form in 1992. As a result, one rule recognizes a defendant's right to certain materials while the other leaves no practical remedy because the material never comes into existence.

Nevertheless, despite this unfairness, for the reasons discussed below, (1) Delaware's requirement for court approval to record grand jury proceedings, and (2) the Superior Court's longstanding practice of denying such requests are constitutional and otherwise lawful. Mr. Ponzo's contention that the Court has no option other than to grant his request as a matter of course contradicts the structure of the controlling rule which requires court approval. That requirement for court approval, in turn, requires a court to exercise discretion based upon a movant's showing of good cause. Because Mr. Ponzo identifies no specific facts to differentiate his case from any other case presented to a Delaware grand jury, the Court must deny his motion.

Despite the lawfulness of the current scheme, Mr. Ponzo's motion highlights a marked unfairness for criminal defendants. Delaware's practice of not recording grand jury testimony deviates from the federal system and a significant majority of state systems. Many of those jurisdictions, including the federal courts, opted to change their rules after grappling with the same or similar issues. A change to Superior Court Criminal Rule 6(e)(1) would be necessary, as well as advisable, to

2

provide procedural fairness for criminal defendants like Mr. Ponzo. Systemically, such a rule change would also provide better insulation against some of the procedural irregularities in Delaware's grand jury system discussed below.

## I.    BACKGROUND

As summarized above, this motion turns on the partial conflict between two Court rules. As background, the Court will first discuss the two rules. It will then highlight relevant aspects of Delaware's grand jury system, including its long-entrenched practice of not recording grand jury proceedings, before discussing the case's relevant factual and procedural background.

## A.    Applicable Court Rules

This case turns primarily on the interpretation and application of Superior Court Criminal Rule 6(e)(1) (hereinafter "Rule 6(e)(1)"), adopted in 1992. That Rule provides that grand jury proceedings, except for deliberations and voting, "may be recorded . . . only with the approval of the court."[1] The language in this Delaware provision is unique among state and federal jurisdictions.

As an important comparison, Federal Rule of Criminal Procedure ("FRCrP") 6(e)(1) has *required* the recording of grand jury proceedings since 1979. Before 1979, the federal system provided for discretionary recording of grand jury proceedings as does Delaware's current rule. Because of the similarities between the past federal practice and the current Delaware practice, federal case law that examined the federal practice prior to 1979 is instructive when considering Mr. Ponzo's challenge.

---

[1] Super. Ct. Crim. R. 6(e)(1).

The other relevant rule, Superior Court Criminal Rule 26.2 (hereinafter "Rule 26.2"), provides certain procedural rights to a defendant. Specifically, it requires the State to disclose prior statements of witnesses immediately after the State calls those witnesses to testify at trial or at an evidentiary hearing. Rule 26.2(f)(3) includes the following within its definition of a statement subject to production: "[a] statement, however taken or recorded, or a transcription thereof, made by the witness to a grand jury."[2] Notably, Delaware first adopted Rule 26.2 in 1992 at the same time it added paragraph (e)(1) to Rule 6.[3] Unlike Delaware's Rule 6(e)(1), however, Delaware's Rule 26.2(f)(3) mirrors its 1979-adopted federal counterpart.

Both Delaware's and the federal version of Rule 26.2(f)(3) are based on the provisions of a federal statute, 18 U.S.C. § 3500. This statute, also known as the Jencks Act, codifies a modified version of the rule first announced by the United States Supreme Court in *Jencks v. United States* (the "*Jencks* Rule"). Delaware's Rule 26.2(f)(3) implies that there should be recordings of grand jury witness testimony available for disclosure in some cases. Notwithstanding that implication, neither the parties nor the Court could identify a single recording of a grand jury proceeding in Delaware since the Court adopted the current rule in 1992.

## B.    Delaware's Grand Jury Process

On the one hand, Delaware's grand jury system provides important procedural protections for criminal defendants. On the other, it serves as a necessary tool to permit the prosecution of criminal conduct. In Delaware, the grand jury serves as an appendage of the Superior Court and any records of its proceedings remain within

---

[2] Super. Ct. Crim. R. 26.2(f)(3).

[3] By order dated October 3, 1991, the prior Superior Court Rules of Criminal Procedure were superseded in their entirety effective January 1, 1992. The revised rules were predominantly patterned upon the Federal Rules of Criminal Procedure.

the Court's control.[4]   As the Delaware Supreme Court has recognized, "[f]or more than two hundred years, Delaware's Constitutions have afforded its citizens the right of being proceeded against in a felony criminal prosecution only upon an indictment by the grand jury."[5]   These provisions "establish the grand jury as a constitutional body" and "preserve the historical and highly prized safeguard of [g]rand [j]ury action . . . ."[6]   In that way, the review serves "as a vital check against the wrongful exercise of power by the State and its prosecutors."[7]   By longstanding tradition, "[i]n federal and state jurisdictions the grand jury serves as a shield against official tyranny, malicious prosecution, and ill-advised, expensive trials."[8]

According to one treatise on criminal procedure, Delaware is one of 18 states that, in addition to the District of Columbia and the federal system, guarantee the accused a right to indictment by a grand jury on felony charges.[9]   In Delaware, grand jury proceedings supersede preliminary hearing proceedings.   An indictment, issued by a grand jury, establishes probable cause for felony charges with finality in the Superior Court and serves as the basis for jurisdiction in the Superior Court absent a waiver of indictment by a defendant.[10]

---

[4] *In re Jessup*, 136 A.2d 207, 212–13 (Del. Super. 1957).

[5] *Johnson v. State*, 711 A.2d 18, 26 (Del. 1998); *see also* Del. Const. art. I, § 8 ("No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger . . . .").

[6] *Johnson*, 711 A.2d at 25 (quoting *In re Opinions of the Justices*, 88 A.2d 128, 131 (Del. 1952)).

[7] *Id.* (quoting *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998)).

[8] *State v. Grewell*, 543 N.E.2d 93, 96 (Ohio 1989) (internal footnote omitted); *see also In re 38 Studios Grand Jury*, 225 A.3d 224, 230–31 (R.I. 2020) (describing the early colonial and American tradition of the grand jury as a means of protecting suspects against malicious or unfounded charges).

[9] Wayne R. LaFave et al., *Indictment Jurisdictions*, 4 Crim. Proc. § 15.1(d) (4th ed. 2022).

[10] *Joy v. Superior Ct.,* 298 A.2d 315, 316 (Del. 1972).

Historically, the grand jury had an investigatory role in addition to an accusatory function.[11] Many jurisdictions, including the federal system, use their grand juries for investigative purposes. As the State acknowledged at oral argument, however, Delaware grand juries are virtually never investigative.[12] They are not used in that manner, no doubt, because Delaware's Attorney General has statutory subpoena power available to support criminal investigations.[13] Most other jurisdictions, by contrast, do not provide their chief prosecutors with such power.[14] In fact, the Delaware Attorney General's compulsory investigative power is so great that it both predates and postdates an indictment by continuing from the outset of the case until the end of the prosecution.[15] Given such broad subpoena power, Delaware's Attorney General has little tactical incentive to ask for Court approval to record grand jury proceedings.

---

[11] *See In re Hawkins*, 123 A.2d 113, 115 (Del. 1956) ("It is . . . clear that the grand jury may institute an investigation of suspected violations of law, and in pursuing the investigation may compel the appearance of witnesses and the production of documents."); *see also, e.g.*, *Jessup*, 136 A.2d at 209 ("The Grand Jury in this County during the year 1956, at the instance and request of the Attorney General, conducted a most thorough investigation relating to the subject of gambling in and about the City of Wilmington.").

[12] Tr. of Oral Arg. at 28:8–22.

[13] *See Hawkins*, 123 A.2d at 115 ("[T]he general investigatory powers of the grand jury are now shared, at least to a substantial extent, by the Attorney General."); *see also* 29 *Del. C.* § 2504(4) (conferring to the Department of Justice the power to "investigate matters involving the public peace, safety and justice and to subpoena witnesses and evidence in connection therewith"); 29 *Del. C.* § 2508(a) (providing that the Attorney General "may issue process to compel the attendance of persons, witnesses and evidence at the office of the Attorney General or at such other place as designated").

[14] Delaware appears to be one of only twelve states that authorizes prosecutors to issue pre-charge investigative subpoenas without an intended grand jury purpose. *See Oman v. State*, 737 N.E.2d 1131, 1135 n.4 (Ind. 2000) (collecting state statutes); *see also H. Morley Swingle, Criminal Investigative Subpoenas: How to Get Them, How to Fight Them*, 54 J. Mo. B. 15, 16 (1998) (stating that twelve states have laws conferring investigative subpoena powers to prosecutors).

[15] *See Johnson v. State*, 983 A.2d 904, 920 (Del. 2009) ("Importantly, however, although this subpoena power is similar to that of a grand jury, the Attorney General's power to investigate is not terminated by arrest or indictment, and continues throughout the prosecution of an alleged crime.").

Delaware Superior Court Rule 6(d), as its federal counterpart, specifies who may be present during the proceedings. It limits attendance to the grand jurors, the attorney general, the witness under examination, interpreters (if needed), and a stenographer or operator of a recording device.[16] Proceedings "may be recorded stenographically or by an electronic recording device *only* with the approval of the court."[17] No one but the grand jurors themselves may be present during their deliberation or voting, and the deliberation and votes can never be recorded.[18] Furthermore, counsel for Mr. Ponzo contended at oral argument that prosecutors rarely attend grand jury proceedings in Delaware,[19] and the State did not contest his assertion.

The common law shields the substance of grand jury proceedings from disclosure with a "veil of secrecy."[20] Superior Court Criminal Rule 6(e)(2) reflects that general rule of secrecy by providing that no one who attends the proceedings, including a stenographer or operator of a recording device, "shall . . . disclose matters occurring before the grand jury except as otherwise provided for in these rules."[21]

This veil of secrecy has two exceptions relevant to Mr. Ponzo's motion. First, and central to Mr. Ponzo's case, is Rule 26.2(f)(3) that provides that the State must provide *recorded or transcribed* grand jury witness testimony to a defendant if that witness later testifies at an evidentiary hearing or trial.[22] Once again, the definition of a statement subject to this requirement is limited to a "statement, however taken or recorded, or a transcription thereof, made by the witness to a grand jury."[23]

---

[16] Super. Ct. Crim. R. 6(d).
[17] Super. Ct. Crim. R. 6(e)(1) (emphasis added).
[18] Super. Ct. Crim. R. 6(d) and (e)(1).
[19] Tr. of Oral Arg. at 21:14–22:2.
[20] *Jessup*, 136 A.2d at 213–14.
[21] Super. Ct. Crim. R. 6(e)(2).
[22] Super. Ct. Crim. R. 26.2(a), (f)(3), and (g).
[23] Super. Ct. Crim. R. 26.2(f)(3).

Disclosure is automatic upon defense request under this rule after the witness testifies on direct examination.

The second relevant exception, found in Rule 6(e)(3), provides for limited disclosure "preliminary to or in connection with a judicial proceeding" or upon a showing by a defendant "that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."[24] That paragraph in Rule 6 recognizes that there can be, in at least some remote circumstance, the need for the Court to dismiss an indictment because of grand jury procedural irregularity. With no transcript available Delaware courts have construed that language consistently with the common law authority of the Court to order disclosure when the interests of justice require it.[25] As with the empty right to *Jencks* material, however, with virtually no record of a proceeding, a right to challenge a particular proceeding based on an irregularity is merely notional.

In summary, despite references in court rules to recordings, transcripts, and the presence of stenographers at a grand jury meeting, grand jury proceedings have not been recorded in Delaware in living memory.[26] As a result, there is *never* a witness statement available for production pursuant to Rule 26.2(f)(3), nor *can* there

---

[24] Super. Ct. Crim. R. 6(e)(3)(C).
[25] *Jessup*, 136 A.2d at 217; *see also In re Steigler*, 250 A.2d 379, 382 (Del. 1969) (explaining that "in circumstances where the interests of justice require it, disclosure of proceedings before the Grand Jury may be ordered by the Superior Court").
[26] *See State v. Webster*, 2015 WL 13697701, at *6 (Del. Super. Nov. 20, 2015) (recognizing that under "current practice" grand jury proceedings are not transcribed); *State v. Melendez*, 2003 WL 23095688, at *1 (Del. Super. Dec. 19, 2003) ("As the State correctly notes, grand jury proceedings are not recorded and therefore it is not possible to produce a transcript of the grand jury proceedings which resulted in the indictment."); *State v. Marks*, 2002 WL 841057, at *3 (Del. Super. Apr. 26, 2002) ("Grand jury proceedings may only be disclosed when the interests of justice require it, and are rarely ever recorded"); *State v. Wescott*, No. 2011008215, at 14:22–15:1 (Del. Super. Apr. 9, 2021) (TRANSCRIPT) ("The practice in Superior Court for many, many years has been to not record the grand jury testimony.").

8

ever be a recording made available to support a defendant's motion to dismiss based upon an alleged irregularity in a grand jury's proceeding.

### C.    Procedural and Factual Background

Two separate defendants filed simultaneous motions seeking Court approval to record grand jury witness testimony.  After the Court of Common Pleas transferred their cases to the Superior Court, both defendants filed their motions in May 2023, citing Rule 6(e)(1).[27]  One defendant, Mr. Ponzo, moved for approval to record testimony in two cases involving alleged drug offenses.  Separately, the other defendant, Nathaniel Cooper, moved for approval to record testimony for a case involving alleged firearm offenses.

After receiving the original motions and the State's response, the Court requested supplemental argument from the parties by letter order.[28]   It requested that they identify any persuasive authority where a court in another jurisdiction found discretionary recording to be unlawful.[29]  It also directed the parties' attention to the structure of the Federal Rules of Criminal Procedure between 1970 and 1979 (hereinafter the "1970-79 federal discretionary recording period").   As explained later in this opinion, a 1970 amendment to the Jencks Act created a partial conflict between that statute and FRCrP 6(d), similar to the tension between Delaware's Rule 26.2(f)(3) and Rule 6(e)(1) today.[30]   Then, in 1979, a federal rule change imposed mandatory recording because of widespread recognition that discretionary recording

---

[27] Mr. Ponzo and Mr. Cooper are represented by the same attorney, who has written on this issue, *see* Tasha Stevens, Esq., *The Case for Recording the Grand Jury Process*, 39 Del. Law. 26 (2021), and who has filed similar motions in at least two prior cases.

[28] *State v. Ponzo*, Id. No. 2302015372, D.I. 7 (June 1, 2023) (hereinafter "Letter and Provisional Order").  To avoid confusion, the Court will refer only to docket entries from Case Id. No. 2302015372 unless otherwise noted.

[29] *Id.* at 1.

[30] *Id.*; *see also infra* notes 74–77 and accompanying text.

was poor practice.[31] Accordingly, federal decisions examining the issue during that nine-year period provide helpful persuasive authority when examining Delaware's Rule 6(e)(1). Finally, the Court asked the parties to identify authority addressing who should bear the burden of proof to compel recording in a discretionary jurisdiction, and what standard should apply to the Court's decision.[32]

In Kent County, the grand jury typically meets on the first Monday of each month.[33] After receiving the defendants' motions at the end of May, the Court attempted to schedule a prompt oral argument. Due to party scheduling difficulties, the argument could not be held before the grand jury next convened in June. To preserve the status quo, the Court entered a provisional order on June 1, 2023.[34] It required the Department of Justice to arrange to record witness testimony before the grand jury *if* it sought to indict either Mr. Ponzo or Mr. Cooper at the June 2023 grand jury session. The provisional order provided, in part, the following:

> if DOJ intends to indict these two defendants during the next grand jury session, it must arrange, no later than 2:00 PM the business day before the Grand Jury meets, for the Court to have a reporter available to record witness testimony only. To preserve grand jury secrecy, the responsible deputy . . . must coordinate with Kent County's Prothonotary . . . only, so she can arrange to have a reporter available at a time designated by the deputy. Neither the witnesses whose testimony will be presented, nor the defendant who is subject to indictment, may be identified to the Prothonotary or to any other individual. The assigned deputy for the matter, or another attorney designee, shall also be present at the time of that testimony so he or she can coordinate the timing of the reporter's entrance to the courtroom to ensure that no other portion of the proceedings are recorded other than the applicable witness(es)' testimony. This provisional order will have no future binding effect other than for June's grand jury meeting and

---

[31] *See infra* notes 79–91 and accompanying text.

[32] Letter and Provisional Order at 2.

[33] Of note, the grand jury typically meets once per month in Kent County which differs from New Castle and Sussex Counties.

[34] *Id.* at 2–3.

these two defendants' cases. A final order that will either grant or deny the defendants' requests will follow after the Court fully considers the parties' positions.[35]

Accordingly, this provisional order had no binding effect beyond the June 2023 grand jury meeting and Mr. Cooper's and Mr. Ponzo's cases. Thereafter, the State requested a continuance of the oral argument into July, and the parties stipulated to extending the provisional order until after the grand jury was scheduled to meet in August. The grand jury then indicted Mr. Cooper at its July meeting.[36] As the provisional order required, the State arranged to record witness testimony presented in support of his indictment.[37]

The Court then heard oral argument on Mr. Ponzo's and Mr. Cooper's motions on July 21, 2023. Shortly thereafter, the Court issued an oral decision denying Mr. Cooper's motion as moot because a reporter had recorded the witness testimony in his grand jury proceeding.[38] Mr. Ponzo, however, still awaited indictment. The Court separately denied his motion on the merits by minute order and outlined its reasoning on the record.[39] The Court also vacated the provisional order and explained that a written opinion would follow.[40] The State has since indicted Mr. Ponzo on two counts of possession with intent to deliver a controlled substance, two counts of possession of a controlled substance, possession of drug paraphernalia, tampering with physical evidence, and conspiracy in the second degree.[41] Since Mr. Cooper's motion is moot, this written decision addresses only the merits of Mr. Ponzo's motion.

[35] *Id.*

[36] *State v. Cooper*, Id. No. 2303013972, D.I. 13.

[37] Tr. of Oral Arg. at 59:10–16.

[38] Tr. of Oral Decision (July 25, 2023) at 10:9–13.

[39] *Id.* at 10:14–16.

[40] *Id.* at 10:17–23.

[41] *State v. Ponzo*, Id. No. 2302015372, D.I. 18; *State v. Ponzo*, Id. No. 2303005845, D.I. 18.

## II.    THE PARTIES' CONTENTIONS

Mr. Ponzo contends that witness testimony before the grand jury must be recorded, upon request, so that the State can honor its obligation to produce those statements pursuant to the *Jencks* Rule and Superior Court Criminal Rule 26.2.   He acknowledges that a witness's grand jury testimony does not become a "statement" until it has been recorded or transcribed.   Nevertheless, he contends that the Delaware Supreme Court's decision in *Lolly v. State*[42] imposes a general duty on the State to preserve evidence that is material to guilt or innocence, and that such evidence may be presented to the grand jury, and must therefore be preserved.[43]   Mr. Ponzo also relies upon *Valentin v. State*[44] for the propositions that the State must inform itself of discoverable evidence and that an overly technical reading of the State's *Jencks* obligations would violate the spirit and purpose of the discovery rules.[45]   In that vein, Mr. Ponzo contends that the State must take the affirmative action necessary to generate *Jencks* material by preserving grand jury witness testimony.[46]

In support of his motion, Mr. Ponzo identifies no salient facts to distinguish his case from any other case that awaits indictment.   Rather, he argues that, in the absence of an explicit standard in the text of Rule 6(e)(1), court approval to record grand jury proceedings should be treated as a gate-keeping function, i.e., as a formality to be granted as a matter of course upon request.[47]   At oral argument, however, counsel for Mr. Ponzo conceded that if the Court construes Rule 6(e)(1) to

---

[42] 611 A.2d 956 (Del. 1992).

[43] Mot. for Court Approval of Recording of Grand Jury Testimony ¶ 8.

[44] 74 A.3d 645 (Del. 2013).

[45] *See id.* at 650–51 (explaining that applying a technical approach to discovery requests is contrary to the purpose of modern discovery and the spirit of the Superior Court Criminal Rules).

[46] *See* Tr. of Oral Arg. at 11:8–11 ("And in that same spirit, that's where *Valentine* strikes me in this situation. *Jencks* says you have a duty to produce this.  The only way you could produce it is by recording it.").

[47] *Id.* at 8:20–9:10, 16:3–13.

12

require an exercise of discretion – rather than granting recording as a matter of course – then the Court would have to find the discretionary element of Rule 6(e)(1) unlawful in order to grant Mr. Ponzo's motion.[48]

The State counters that the text of Rule 6(e)(1) implies that recording cannot be ordered as a matter of course. Furthermore, the State emphasizes that Rule 26.2(f)(3), by its plain terms, does not require recording. Rather, it requires production only *if* a stenographer or electronic reporter recorded the testimony. Stated differently, the State emphasizes that the rules, when read together or separately, do not *require* the recordation of grand jury witness testimony.

Based on the Superior Court's decision in *State v. Grossberg*, the State further contends that Rule 6(e)(1) requires a defendant to demonstrate "extraordinary circumstances" to obtain court approval to record any portion of a grand jury proceeding.[49] This high standard, the State maintains, is appropriate as an aspect of grand jury secrecy. In other words, the State contends that the same standard that applies to the *production* of grand jury records should be applied to Court approval to merely *record* the proceedings.

The State also contends that the *Lolly* and *Deberry v. State*[50] decisions impose no obligation on it to create evidence by recording testimony. Furthermore, the State contends that the *Valentin* decision places no obligation on it to manufacture evidence that does not otherwise exist. The State also stresses that Rule 6(e)(1)'s requirement for a court order to record the proceedings leaves the State no control over the decision. That, according to the State, makes it inappropriate to place the

---

[48] *See id.* at 18:16–20 ("And if we didn't look at it as a gatekeeping function for approval, but looked at it as some type of discretion has to be exercised [sic], then I would agree that that requirement of approval by Superior Court would have to be deemed unlawful.").

[49] *See State v. Grossberg*, 1996 WL 769342, at *1 (Del. Super. Dec. 6, 1996) ("Defendants have failed to demonstrate any extraordinary circumstance inherent in these cases for the recording of the grand jury proceeding, and therefore, this request is . . . denied.").

[50] 457 A.2d 744 (Del. 1983).

burden on the State to preserve the testimony as contemplated in *Lolly*, *Deberry*, and *Valentin*.

Finally, at oral argument, the State presented an additional argument in response to Mr. Ponzo's allegation that non-recording deprives him, and those like him, of *Jencks* material. According to the State, as a matter of practice in Kent and New Castle Counties, grand jury presentations are made almost exclusively by one or two officers without regard to whether those officers have any connection to the criminal investigation.[51] The State stresses that a police agency representative typically appears at the sessions and presents information gleaned from the agency's "collective knowledge and the information that's been relayed to them."[52] In other words, indictments in such cases are secured on the basis of hearsay alone. The State argues that, given this practice, grand jury witnesses often have no personal knowledge about a case. This means that they will rarely testify at a subsequent hearing or trial.[53] Thus, the State contends that the failure to record grand jury witness testimony is frequently harmless when evaluated in light of the *Jencks* Rule and Rule 26.2(f)(3).

## III. ANALYSIS

This motion turns largely on whether the partial inconsistency between Rule 26.2(f)(3) and Rule 6(e)(1) renders Rule 6(e)(1) unlawful. As explained below, it does not. Federal courts and other states have consistently found discretionary recording to be lawful. Although many of the jurisdictions that have grappled with the issues raised by Mr. Ponzo's motion have changed their rules to require recording, none have first found discretionary recording unlawful.

---

[51] Tr. of Oral Arg at 30:15–20.
[52] *Id.* at 31:9–13.
[53] *Id.* at 30:21–31:4; 49:10–11.

After recognizing Rule 6(e)(1)'s validity, the inquiry turns to (1) who holds the burden of persuasion to convince the Court to approve recording and (2) what standard the Court should apply when considering a motion to record grand jury proceedings. As discussed below, the only prior Delaware decision to examine the issue inappropriately conflated grand jury secrecy with the mere recording of proceedings. The standard to approve the latter should not be as stringent as the one applied when evaluating when to order the production of grand jury materials. Good cause is the appropriate standard, but even when applying that lesser standard, Mr. Ponzo has identified no facts to support his motion for Court approval.

### A. There is no constitutional or other legal requirement that mandates the recording of grand jury testimony.

Mr. Ponzo contends that Superior Court Criminal Rule 26.2, and the *Jencks* Rule that it reflects, entitle him to a recording of grand jury testimony automatically upon request. He argues that, only in that way, can the State honor its subsequent disclosure obligations for impeachment purposes. While his fairness-based argument is well-grounded, (1) the evolution of the *Jencks* Rule's application to grand jury testimony in every jurisdiction that has examined the issue, and (2) the history of Delaware's criminal rules demonstrates Delaware's current practice to be lawful.

In *Jencks v. United States*, decided in 1957, the United States Supreme Court held that the federal government must "produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at the trial."[54] In other words, after a witness for the government testifies at trial, the government must produce any of that witness's related prior statements in its possession upon request

---

[54] *Jencks v. United States*, 353 U.S. 657, 672 (1957).

by the defense. There, the Supreme Court emphasized the importance of prior witness statements when impeaching that witness's trial testimony.[55] It explained that justice requires affording the defense an opportunity to review prior statements to determine if those statements discredit the government's witnesses.[56] In articulating the rule, the *Jencks* Court rejected the need for an accused to first demonstrate a conflict between the prior statement and the testimony.[57] There can be no chance for the defense to demonstrate a conflict or even recognize one without first reviewing the prior statement.[58]

Were the *Jencks* Rule to be a constitutional one, the result in this case would be different. It has no constitutional basis, however. Rather, the Supreme Court adopted it in the exercise of its supervisory power over the federal courts.[59] Congress later codified the Rule (though slightly modifying it) in the Jencks Act, 18 U.S.C. § 3500, which now controls the federal analysis.[60] Subsection (b) of the Jencks Act provides that:

---

[55] *See id.* at 667 ("Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory.").

[56] *See id.* at 668–69 ("Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less.").

[57] *Id.* at 668.

[58] *See id.* at 667–68 ("The occasion for determining a conflict cannot arise until after the witness has testified, and unless he admits conflict . . . the accused is helpless to know or discover conflict without inspecting the reports.").

[59] *See Palermo v. United States*, 360 U.S. 343, 345 (1959) (explaining that the Supreme Court in *Jencks* had exercised its "power, in the absence of statutory provision, to prescribe procedures for the administration of justice in the federal courts"); *United States v. Augenblick*, 393 U.S. 348, 356 (1969) ("Indeed our *Jencks* decision and the Jencks Act were not cast in constitutional terms. They state rules of evidence governing trials before federal tribunals; and we have never extended their principles to state criminal trials." (internal citation omitted)).

[60] *See Hooks v. State*, 416 A.2d 189, 200 (Del. 1980) (explaining that in the federal system "the rule is now controlled by statute").

[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

Although the *Jencks* Rule is a federal creation, it applies in Delaware for two reasons. First, in 1989, the Delaware Supreme Court expressly adopted the *Jencks* Rule, as modified by the Jencks Act, in *Hooks v. State*.[61] Second, the Superior Court adopted Superior Court Criminal Rule 26.2 in 1992 to "substantively mirror" its federal counterpart.[62]

At their outset, neither the *Jencks* Rule nor the Jencks Act initially required the government to disclose recordings of a witness's grand jury testimony. Two earlier United States Supreme Court decisions examined what standard should apply to disclosure of grand jury materials. In *Pittsburgh Plate Glass v. United States*[63] and *Dennis v. United States,*[64] the Court left such decisions to the discretion of trial courts pursuant to the then-existing FRCrP 6(e).[65]

More specifically, first, in *Pittsburgh Plate Glass*, the United States Supreme Court addressed the relationship between the *Jencks* Rule and FRCrP 6(e). It concluded that neither the *Jencks* case nor the Jencks Act applied to grand jury minutes.[66] Rather, the Court concluded that disclosure of grand jury minutes was

---

[61] *See id.* ("In adopting the *Jencks* Rule, we feel we should be governed by the carefully considered approach now being applied in the federal courts under the statute.").
[62] *Valentin*, 74 A.3d at 648 n.10.
[63] 360 U.S. 395 (1959).
[64] 384 U.S. 855 (1966).
[65] At the time, FRCrP 6(e) said nothing about recording or transcription, and provided for the secrecy of grand jury proceedings and exceptions allowing disclosure, which continues to be the function of FRCrP 6(e)(2) and 6(e)(3) today. The question of recording was governed by FRCrP 6(d), which authorized the presence of a court reporter but was then silent on whether and when recording should occur. Recording was not governed by FRCrP 6(e) until the amendment to FRCrP 6(e)(1) in 1979.
[66] *See Pittsburgh Glass*, 360 U.S. at 398 ("It appears to us clear that *Jencks v. United States* . . . is in nowise controlling here. It had nothing to do with grand jury proceedings and its language was

governed solely by FRCrP Rule 6(e).[67]  Thus, insofar as Mr. Ponzo's argument is based on the original *Jencks* case, that argument is squarely foreclosed by *Pittsburgh Glass*.  In addition, the Court in *Pittsburgh Glass* held that grand jury minutes needed to be produced pursuant to FRCrP Rule 6(e) only upon a showing of "particularized need . . . which outweighs the policy of secrecy."[68]

Next, in *Dennis*, the Supreme Court held that "where the Government concedes that the importance of preserving the secrecy of the grand jury minutes is minimal and also admits the persuasiveness of the arguments advanced in favor of disclosure," the defense establishes particularized need to produce grand jury transcripts to cross-examine government witnesses.[69]  The *Dennis* Court further explained that "[i]n our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant facts."[70]  While construing FRCrP 6(e), it noted that the Jencks Act, among other sources, reflected "the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice."[71]  Once again, neither *Pittsburgh Glass* nor *Dennis* fashioned or applied a constitutional rule—rather, they are best understood as interpreting the then-existing version of FRCrP 6(e).[72]

---

not intended to encompass grand jury minutes. Likewise, it is equally clear that Congress intended to exclude those minutes from the operation of the so-called Jencks Act").

[67] *Id.*

[68] *Id.* at 400.

[69] 384 U.S. at 871–72, 875.

[70] *Id.* at 873.

[71] *Id.* at 870–71.

[72] *See Pittsburgh Glass*, 360 U.S. at 399 ("Petitioners argue, however, that the trial judge's discretion under Rule 6(e) must be exercised in accordance with the rationale of Jencks[.]"); *Dennis*, 384 U.S. at 872 ("The showing made by petitioners, both in the trial court and here, goes substantially beyond the minimum required by Rule 6(e) and the prior decisions of this Court.").

In 1970, Congress amended the definition of "statement" in the Jencks Act, partially in response to the *Dennis* decision.[73] The federal statute then expressly included, within the definition of statement, the following: "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."[74] Thus, disclosure of grand jury witness recordings became mandatory under the Jencks Act without any case-specific showing of particularized need.[75] In contrast, FRCrP 6(d) provided that "a stenographer or operator of a recording device *may* be present while the grand jury is in session . . . ."[76] Prior to a 1979 amendment to FRCrP 6(e)(1), federal courts uniformly construed the language in FRCrP 6(d) to make transcription or recording of grand jury witness testimony permissive, rather than mandatory.[77] Thus, on one hand, disclosure of a transcript or recording of grand jury testimony became mandatory under the Jencks Act in 1970. On the other hand, FRCrP 6 conferred discretion (presumably upon the prosecution) regarding what proceedings to record until 1979. In that way, FRCrP 6(d) and the Jencks Act as amended co-existed in tension during the 1970-79 federal discretionary recording period, similar to the tension between Delaware's Rule 6(e)(1) and Rule 26.2 today.

By letter, the Court requested the parties to identify any decision from any jurisdiction where a court has found the 1970-79 federal discretionary recording or any similar state system to be unlawful. Neither the State nor Mr. Ponzo could identify a single case. To the contrary, during the 1970-79 federal discretionary

---

[73] William C. Bryson et al., *Production of Witness Statements at Trial*, Grand Jury Law and Practice § 5:15 (2d ed. 2022).

[74] 18 U.S.C. § 3500(e)(3); *see also* Pub. L. 91-452, Title I, § 102, 84 Stat. 926 (Oct. 15, 1970) (amending the Jencks Act).

[75] Bryson, Grand Jury Law and Practice § 5:15.

[76] *United States v. Price*, 474 F.2d 1223, 1225 n.1 (9th Cir. 1973) (emphasis added); Fed. R. Crim. P. 6, Advisory Committee Notes, 1979 Amendments, Note to Subdivision (e) (1).

[77] *See United States v. Aloisio*, 440 F.2d 705, 708 (7th Cir. 1971) (explaining that "Rule 6(d) presently permits, but does not demand, the presence of a stenographer for the purpose of recording evidence" and collecting cases).

recording period, federal courts consistently held that neither the *Dennis* decision nor the amendment to the Jencks Act imposed a constitutional, statutory, or rule-based requirement to record grand jury testimony.[78] All federal circuits that examined the issue uniformly concluded that a change to the Federal Rules of Criminal Procedure would be necessary to make recording mandatory.[79]

The Fifth Circuit Court of Appeal's 1978 decision in *United States v. Head* is particularly instructive because it found federal discretionary recording lawful under what, most would concede, were markedly unfair circumstances.[80] At the time, federal prosecutors, at least in the Fifth Circuit, were the individuals who exercised discretion over whether or not to record witness testimony.[81] In *Head*, the prosecutors selectively recorded some grand jury witness testimony to benefit their

---

[78] *See, e.g.*, *United States v. Head*, 586 F.2d 508, 511 (5th Cir. 1978) ("We have held that there is no constitutional or statutory requirement that grand jury proceedings be recorded, though at the same time commenting that it was the far better practice for such recordings to be made."); *United States v. Biondo*, 483 F.2d 635, 641 (8th Cir. 1973) (finding no Jencks Act violation where grand jury testimony was not recorded and emphasizing that "there is no constitutional or statutory requirement that grand jury testimony be recorded"); *United States v. Cramer*, 447 F.2d 210, 213 (2d Cir. 1971) (rejecting a due process challenge and explaining that "a defendant is not entitled to a reversal of his conviction simply because testimony before the grand jury which returned an indictment against him has not been recorded").

[79] *See, e.g.*, *Aloisio*, 440 F.2d at 708 ("While we agree that the preservation of grand jury testimony is the wise practice, we are presently unwilling to bind the various district courts of this Circuit to such a practice. Rather, we will rely upon the individual district courts to exercise their local rule-making powers in this area pending any amendment to Rule 6(e) of the Federal Rules of Criminal Procedure."); *Cramer*, 447 F.2d at 214 (concluding that although "recordation as a matter of course certainly is the better procedure" the "[f]ormulation of a general principle that all grand jury testimony must be recorded is a matter which may more appropriately be disposed of in the current revision of the Federal Rules of Criminal Procedure or by the Circuit Councils in the exercise of their supervisory power"); *United States v. John*, 508 F.2d 1134, 1142 (8th Cir. 1975) ("The appellants assign as error the unfairness [sic] of the government's action which made discovery pursuant to the Jencks Act impossible. . . . While the recording of all grand jury testimony is the desirable procedure, it is not mandatory. . . . While we are sympathetic to the appellants' complaint and recognize the limited nature of the relief sought, this Court is without power to amend Rule 6 of the Federal Rules of Criminal Procedure.").

[80] *Head*, 586 F.2d at 511.

[81] *See id.* at 510 (explaining that "no transcription was made by the court reporter of the testimony" of a particular government witness "[a]t the prosecutor's request").

investigation.[82]   They  declined to record other witness's testimony to purposely avoid their obligations under the Jencks Act, however.[83]   When denying relief despite this seemingly egregious practice, the Fifth Circuit explained that recording grand jury testimony was discretionary and that "no part of the Jencks Act has ever been construed to require the government to [d]evelop potential Jencks Act statements so that such materials can be combed in the hopes of obtaining impeaching inconsistencies."[84]   In confirming the lawfulness of the practice (or at least that it was not "misconduct which would abort the prosecution or bar jury access to the witness's testimony"), the Fifth Circuit observed that such selective transcription by a prosecutor was akin to possessing *Jencks* material and then impermissibly destroying some of it.[85]   Despite that recognition, it refused to dismiss the case against the defendant because he could not identify particularized prejudice.[86]   As with present-day Delaware court-ordered discretionary recording, once the prosecutors declined to record the testimony, the matter was effectively over.   There was then in the federal system, as in Delaware's system today, no practical way to retroactively demonstrate prejudice.

In every federal decision examining federal discretionary recording between 1970 and 1979, courts (1) found the practice lawful, while (2) routinely commenting that recording grand jury proceedings was the better practice.  After several circuits

---

[82] *Id.* at 510–11.

[83] *Id.* at 511.

[84] *Id.* (quoting *United States v. Cruz*, 478 F.2d 408, 411 (5th Cir. 1973)); *cf. United States v. Lieberman*, 608 F.2d 889, 897 (1st Cir. 1979) (explaining in a different context that "[w]hen some of what a witness said was not recorded, however, it was never part of a 'statement' within the meaning of the Jencks Act (and was arguably never 'in the possession of the United States' either).").

[85] *Head*, 586 F.2d at 511–12.

[86] *Id.* at 512; *cf. United States v. Hall*, 424 F. Supp. 508, 528–29 (W.D. Okla. 1975) (ordering that grand jury testimony that was transcribed be disclosed under the Jencks Act but declining to open an inquiry into why not all of the grand jury testimony was transcribed), *aff'd*, 536 F.2d 313 (10th Cir. 1976).

grappled with the same issues that Mr. Ponzo raises, calls for a rule change became forceful and widespread. One judge opined in a key dissent that discretionary recording was likely violative of due process, and emphasized the appropriateness of a practical fix:

> if discretionary and selective recording is the rule, "it ought to be changed. The Supreme Court has emphasized the importance to the defense of access to the transcript of the grand jury proceedings. A defendant cannot have that advantage if the proceedings go unrecorded."[87]

The federal system amended its rules in 1979 to remedy the unfairness. First, paragraph (e)(1) was added to FRCrP 6 to require recording.[88] Since then, FRCrP 6(e)(1) provides that "[e]xcept while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device."[89]

The Advisory Committee's comments advocating for this rule change began by recognizing that federal courts had uniformly concluded that recording was "permissive and not mandatory" under the prior version of the rule.[90] The Committee did not suggest that the prior construction was either incorrect or otherwise unlawful but offered four rationales to change the rule. The reasons included: (1) to ensure that the defendant may impeach a prosecution witness with prior inconsistent statements taken before the grand jury; (2) to ensure that testimony before the grand jury is trustworthy; (3) to restrain prosecutorial abuses; and (4) to

---

[87] *Cramer*, 447 F.2d at 221 (Oakes, J., dissenting) (quoting 1 Wright, Federal Practice and Procedure § 103 (1969 ed.)).

[88] Fed. R. Crim. P. 6, Advisory Committee Notes, 1979 Amendments, Note to Subdivision (e)(1). Prior to 1979, grand jury recording was governed FRCrP 6(d), which authorized but did not require the presence of court reporters. After the 1979 amendment, recording became mandatory pursuant to FRCrP 6(e)(1), which rendered the discretionary implications of FRCrP 6(d) irrelevant.

[89] Fed. R. Crim. P. 6(e)(1).

[90] Fed. R. Crim. P. 6, Advisory Committee Notes, 1979 Amendments, Note to Subdivision (e)(1).

support the prosecution's case at trial.[91]   As the Committee recognized, "[f]airness to the defendant would seem to compel a change in the practice."[92]

In addition, the Committee flatly rejected any assertion that recording would jeopardize grand jury secrecy.  The new FRCrP 6(e)(1), according to the Committee, would change only the recording requirement and would "in no way expand the circumstances in which disclosure of the grand jury proceedings is permitted or required."[93]   Disclosure of recordings, it observed, would still be controlled by "the unchanged portions of rule 6(e)" that reflected common law secrecy, and the Jencks Act, 18 U.S.C. § 3500.[94]

At the same time as the change to FRCrP 6(e), the federal courts simultaneously adopted FRCrP 26.2 to "place in the criminal rules the substance of what is now 18 U.S.C. § 3500 (the Jencks Act)."[95]   FRCrP 26.2(f)(3) defined "statement" to include "the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement."[96]  Notably, it omitted the "if any" qualifier found in the Jencks Act, presumably because pursuant to the newly added FRCrP 6(e)(1), there would always be a recording available for disclosure.  Thus, after the 1979 rule changes, grand jury witness testimony is always recorded in the federal system and automatically subject to disclosure, without a showing of particularized need, under the conditions triggering the government's *Jencks* obligations.

---

[91] *Id.*
[92] *Id.* (quoting 8 Moore, Federal Practice § 6.02[d] (2d ed. 1972)).
[93] *Id.*
[94] *Id.*
[95] Fed. R. Crim. P. 26.2, Advisory Committee Notes, 1979 Addition.
[96] Fed. R. Crim. P. 26.2(f)(3).

As in the federal system, the trend amongst the states has sharply pointed toward the mandatory recording of grand jury testimony.[97]  Subject to a variety of state-specific nuances, thirty-five states and the District of Columbia now require recordation either by statute or court rule.[98]  The Court has identified only fourteen states, including Delaware, in which recording appears to remain discretionary.[99]

While the Court agrees that a shift toward mandatory recording has sound policy justifications, such a change has typically been achieved by court rule (as in the federal system).  For example, in 1970, the Supreme Court of Hawai'i, when exercising its state constitutional power to promulgate and modify court procedural rules, entertained a petition for an order to compel the presence of a court reporter at

---

[97] *See* William C. Bryson et al., *Recording of Proceedings*, Grand Jury Law and Practice § 4:9 (2d ed. 2022).

[98] *See* Alaska R. Crim. P. 6(k); Ariz. R. Crim. P. 12.7(a); Cal. Penal Code § 938(a) (West); Colo. Rev. Stat. Ann. § 16-5-204(f) (West); Conn. Gen. Stat. Ann. § 54-45a(a) (West); D.C. Super. Ct. R. Crim. P. 6(e)(1); Haw. R. Penal P. 6(d); I. C. R.  6.2(a); 725 Ill. Comp. Stat. Ann. 5/112-7; Ind. Code Ann. § 35-34-2-3(d) (West); Iowa R. Crim. P. 2.3(f); Kan. Stat. Ann. § 22-3006(b) (West); Ky. R. Cr. 5.16(1); Mass. R. Crim. P. 5(i); Minn. R. Crim. P. 18.04(2); Miss. Code. Ann. § 13-7-25 (West); Mont. Code Ann. § 46-11-316(1) (West); Neb. Rev. Stat. Ann. § 29-1407.01(1) (West); Nev. Rev. Stat. Ann. § 172.215(1)–(3) (West); N.J. Stat. Ann. § 2B:21-8 (West); N.M. Stat. Ann. § 31-6-8 (West); N.D. Cent. Code Ann. § 29-10.1-16(1) (West); Ohio Crim. R. 22 and *State v. Grewell*, 543 N.E.2d 93, 98 (1989); Okla. Stat. Ann. tit. 22, § 340(A) (West); Or. Rev. Stat. Ann. § 132.260(1); Pa. R. Crim. P. 228; R.I. Super. R. Crim. P. 6(e)(1); S.C. Code Ann. § 14-7-1700 (West); S.D. Codified Laws § 23A-5-11.1; Tenn. Code Ann. § 40-12-208(a) (West); Utah Code Ann. § 77-10a-13(7)(a) (West); Vt. R. Crim. P. 6(e)(1); Va. Code Ann. §§ 19.2-212 & 19.2-215.9 (West); Wash. Rev. Code Ann. § 10.27.070(4) (West); W. Va. R. Crim. P. 6(e)(1); Wyo. R. Crim. P. 6(a)(10).

[99] *See* Ala. Code § 12-17-275; Ark. Code Ann. § 16-85-512 (West); Del. Super. Ct. Crim. R. 6(e); *Thompson v. State*, 565 So. 2d 1311, 1313 (Fla. 1990) ("Sections 905.17 and 905.27 of the Florida Statutes (1987), do not establish a duty to record grand jury proceedings, nor do we find any constitutional basis to impose such a duty in all cases."); Ga. Code Ann. § 15-12-83(a) (West); La. Code Crim. Proc. Ann. art. 433(A)(1)(d) (West); ME. R. U. Crim P. R. 6(f); Md. Code Ann., Cts. & Jud. Proc. § 2-503 (West); Mich. Comp. Laws Ann. § 767.16 (West); Mo. Ann. Stat. § 540.105 (West); NH. R. S. Ct. Rule 52(1); N.Y. Crim. Proc. Law § 190.25(3)(c); *State v. Jones*, 210 S.E.2d 454, 456 (N.C. Ct. App. 1974); Wis. Stat. Ann. § 968.43(1) (West).    The fiftieth jurisdiction, Texas, provides that only the testimony of an accused or a suspect may be recorded.   Tex. Code Crim. Proc. Ann. Art. 20A.201(a)(West).

a grand jury session.[100] Reasoning that a right to disclosure of grand jury transcripts exists in some circumstances, that court observed that failure to record the testimony would result in a right to disclosure without a remedy.[101] To bridge this gap between right and remedy, the court amended Hawai'i Rule of Criminal Procedure 6(d) to require an official court reporter to be present and to record all evidence presented to the grand jury.[102] The substance of the rule, now Hawai'i Rule of Penal Procedure 6(d), remains largely unchanged today.[103]

Likewise, in 1989, the Supreme Court of Ohio considered whether grand jury proceedings must be recorded, while noting that many Ohio counties did not do so at the time.[104] The court recognized that recordation is not required by the United States Constitution, but discussed in detail the 1979 federal rule change and the reasons given by the Advisory Committee, including that recordation "serves to make witnesses accountable for their testimony."[105] The court expressed concern that without recordation, a defendant would be unable to obtain testimony even when required by Ohio court rules (e.g., upon a showing of particularized need or when a co-defendant had testified before the grand jury).[106] In light of these policy considerations, the court construed Ohio's Criminal Rule 22, which required the recording of all proceedings in felony cases, to apply to grand jury proceedings.[107]

---

[100] *McMahon v. Off. of City & Cnty. of Honolulu*, 465 P.2d 549, 550 (Haw. 1970) (citing Haw. Const. Art. V § 6).

[101] *See id.* at 551 ("We have no difficulty in requiring that presentations of evidence to grand juries in this state shall be recorded. Otherwise there would be no remedy to make effective a . . . right which may clearly exist.").

[102] *Id.* at 552.

[103] *See* Haw. R. Penal P. 6(d) ("An official reporter or operator of a recording device shall be present and shall fully record all evidence presented to and all statements made before the grand jury.").

[104] *State v. Grewell*, 543 N.E.2d 93, 96–97 (Ohio 1989).

[105] *Id*.

[106] *Id.* (citing Ohio Crim. R. 6(e) and 16(b)(1)).

[107] *Id.* at 97–98.

Thus, despite the permissive nature of Ohio's rule (which, like the pre-1979 federal rule, provided only that a stenographer "may" be present), Ohio's high court construed the recording of grand jury proceedings as mandatory.[108]

In 1987, the Supreme Court of Wyoming also addressed a defendant's challenge to the practice of not recording grand jury proceedings. The Wyoming court explained that "[t]he general rule is that grand jury testimony need not be recorded in the absence of a procedural rule or statute which requires recording, and the failure to do so does not violate due process."[109] Thus, like the federal courts in the 1970–79 federal discretionary recording period, the Wyoming court found that the failure to record did not violate a defendant's due process rights or Wyoming's *Jencks*-like obligation. The Court followed with the suggestion, however, that such an argument be addressed through legislation.[110] Notably, one dissenting justice questioned the fairness and constitutionality of allowing a prosecutor to "obviate discovery rights" afforded by Wyoming's *Jencks* provision.[111] While the court did not compel recording in that case, Wyoming has also since amended its rule to mirror the federal rule.[112] Most recently, Oregon, which used to authorize trial courts to

---

[108] *Id.*

[109] *Hennigan v. State*, 746 P.2d 360, 369 (Wyo. 1987).

[110] *Id.* at 370.

[111] *See id.* at 391 (Urbigkit, J., dissenting) ("Finally, I would question that a prosecutor can obviate discovery rights of Rule 18, W.R.Cr.P. found in subsection (a)(1) or whatever Jencks Act rights are provided in subsection (b), by failing to provide a reporter for the sessions.").

[112] Wyo. R. Crim. P. 6(a)(10) ("All proceedings, except when the grand jury is deliberating or voting, shall be recorded stenographically or by an electronic recording device."). While located in the requirements for a county grand jury, this requirement appears to apply equally to state grand juries. *See* Wyo. R. Crim. P. 6(b)(2) ("A state grand jury shall have the same powers and duties and shall function in the same manner as a county grand jury, except for the provisions of this subdivision, and except that its jurisdiction shall extend throughout the state.").

appoint a court reporter only on motion by the district attorney,[113] enacted a statute in 2017 to require that all testimony be recorded.[114]

In summary, the federal amendment to FRCrP 6(e)(1) in 1979 accelerated the modern trend toward mandatory recording. Neither the Court, nor the parties, have identified a single case from any jurisdiction in which either the *Jencks* Rule or a similar court rule was construed to require the recording of grand jury witness testimony, however. Rather, all decisions that examined the issue uniformly found discretionary recording to be lawful. There is no authority to suggest that a binding federal or state rule, constitutional or otherwise, obligates Delaware courts to transcribe or record testimony provided to a grand jury.

In addition to this overwhelming persuasive authority, Delaware case law and court rules provide little to no support for mandatory recordation. In 1992, the Delaware Superior Court amended its criminal rules. First, Delaware adopted Superior Court Criminal Rule 26.2, which "substantively mirrors" its federal counterpart to include recorded or transcribed grand jury witness testimony within the definition of *Jencks* material.[115] In contrast, Superior Court Criminal Rule 6(e)(1), adopted at the same time, departed from the 1979 Amendment to its federal counterpart by rejecting mandatory recording. A simultaneous amendment to Rule 6(e) that rejected mandatory recording undercuts the argument that the adoption of Rule 26.2(f)(3) indirectly makes recording mandatory. Like the Jencks Act, Rule 26.2 provides for the disclosure of existing materials fitting the definition of

---

[113] *See State ex rel. Woodel v. Wallace*, 750 P.2d 178, 180 (Or. Ct. App. 1988).
[114] *See* Oregon Laws ch. 650 §§ 1 and 2 (Aug. 2, 2017); Or. Rev. Stat. Ann. §§ 132.250 and 132.260 (West).
[115] *Valentin*, 74 A.3d at 648 n.10.

"statement," but imposes no obligation on the State to create or manufacture a "statement" for future impeachment purposes.[116]

When recognizing the lawfulness of Delaware's practice, the Court does not minimize how unfair it is to create a right to *Jencks* material that, for all practical purposes, remains unavailable because of Delaware's practice of non-recordation. A criminal defendant's right to procedural due process "guarantees the fundamental elements of fairness in a criminal trial,"[117] and this right extends to pre-trial matters that bear "a substantial relationship to his or her opportunity to defend against the charge."[118] While all available persuasive authority has declined to find a violation of due process in this practice, there is no question that the practice impairs the criminal justice process. Delaware's current practice renders a defendant's access to *Jencks* material unobtainable in the grand jury setting for all practical purposes. In the undersigned's view, it is unfair for the Delaware rules to recognize the value of such statements for impeachment purposes while simultaneously perpetuating a structure that eliminates the obligation altogether. This Court, however, is not free to disregard an otherwise lawful rule despite such unfairness. On balance, the simultaneous adoption of Rule 26.2(f)(3) did not render the discretionary aspect of Rule 6(e)(1) so fundamentally unfair that it is unconstitutional on procedural due process grounds.

Similarly, contrary to Mr. Ponzo's argument, the state constitutional rule articulated in *Lolly v. State* does not apply here. In *Lolly*, the Delaware Supreme Court explained that, pursuant to *Deberry*, "the State . . . is obligated to preserve evidence which is material to a defendant's guilt or innocence as a matter of federal

---

[116] *See Head*, 586 F.2d at 511 (explaining that the Jencks Act imposes no obligation to create *Jencks* material).

[117] *Monceaux v. State*, 51 A.3d 474, 477 (Del. 2012) (quoting *Spencer v. State of Texas*, 385 U.S. 554, 563–64 (1967)).

[118] *State v. Kolaco*, 2020 WL 7334176, at *7 (Del. Super. Dec. 14, 2020).

28

and state due process."[119] *Lolly* extended this obligation "to claims involving the alleged failure to gather evidence *ab initio*."[120]

Mr. Ponzo's contention that failure to record a witness's grand jury testimony is the same as failing to gather potentially exculpatory evidence is incorrect for three reasons. First, as the Delaware Supreme Court recently explained, the *Deberry/Lolly* line of cases is "limited to those instances where potentially exculpatory *physical* evidence was either not collected by law enforcement or collected but not preserved during the course of the prosecution."[121] A grand jury witness's unrecorded testimony is not missing physical evidence. Second, the State has no control over whether to record the testimony or other proceedings – such records are "subject to the control of the Superior Court."[122] Third and finally, the State and defendant have equal authority to request that grand jury testimony be recorded. A motion by either party requires court approval. On paper at least, both parties have an equal ability to request preservation of the evidence.

Finally, Mr. Ponzo's argument under *Valentin v. State* is unavailing for a similar reason. The State's duty to inform itself of discoverable evidence[123] does not impose an obligation to create *Jencks* statements, particularly statements that cannot exist without prior court approval. In sum, there is no constitutional requirement, no statute, and no court rule that makes the recording of grand jury proceedings mandatory in Delaware.

---

[119] *Lolly*, 611 A.2d at 959.
[120] *Id.* at 960.
[121] *See Coleman v. State*, 289 A.3d 619, 626 (Del. 2023) (declining to extend the rule to include the "observations of evidence-collecting law-enforcement officers").
[122] *Jessup*, 136 A.2d at 213.
[123] *Valentin*, 74 A.3d at 651.

**B. The movant who requests the recording of grand jury proceedings bears the burden of persuasion under Rule 6(e )(1).**

It does not end the inquiry simply to conclude that recording may be permissive. *State v. Grossberg*,[124] the single Delaware decision that addresses who holds the burden and what standard should be applied, is not mandatory authority and is unpersuasive. The mere "fact that a particular discovery procedure is 'permissive' rather than 'mandatory' does not mean that permission may be arbitrarily denied."[125] At the outset, the Court must exercise reasoned discretion and not act arbitrarily or capriciously when evaluating a motion to approve recording. Give the recognition that the Court must exercise its discretion, Mr. Ponzo's motion requires the Court to determine (1) who bears the burden of persuasion in a pre-indictment request for recording, and (2) the standard that should govern the exercise of that discretion. As first addressed below, the Rule places the burden on the movant who seeks approval to record.

At the outset, the Court notes that among all states where recording is discretionary, only one state's court, a Louisiana intermediate appellate court, has adopted a rule placing the burden on the State to justify non-recordation.[126] The much greater weight of authority on the subject places the burden on the defendant to justify a request for recording.[127]

---

[124] 1996 WL 769342, at *1.
[125] *United States v. Thoresen*, 428 F.2d 654, 666 (9th Cir. 1970).
[126] *See State v. Peterson*, 2019 WL 4493494, at *5 (La. Ct. App. Sept. 18, 2019) ("In deciding who bears the burden at a hearing on recordation, because the state has the obligation of disclosure from grand jury proceedings under La. Code of Criminal Procedure Art. 434.1, the state should bear the burden of proving to a preponderance of the evidence that there is just cause to not record grand jury testimony.").
[127] *See Thompson v. State*, 565 So. 2d 1311, 1313 (Fla. 1990) ("[T]he interests of justice may require trial courts to order recordation in some instances. However, no showing was made to establish that Thompson had a particular need to preserve grand jury testimony through recording." (citing *State v. McArthur*, 296 So. 2d 97, 100 (Fla. Dist. Ct. App. 1974))); *State v. Rich*, 395 A.2d 1123, 1127 (Me. 1978) ("Transcription of the testimony presented to the grand jury is made

One federal circuit took a different approach, and that decision, while ultimately distinguishable, is worth examining when considering how to allocate the burden of persuasion. In *United States v. Price*, the Ninth Circuit Court of Appeals addressed the burden issue during the 1970-79 federal discretionary recording period.[128] That court held that a sound exercise of discretion generally favored granting a request to record grand jury proceedings and placed the burden on the government to show a "legitimate and compelling interest" to justify not recording the proceeding.[129] The court further held that the government could not meet its burden by invoking grand jury secrecy, because it is the disclosure of a recording, and not its making, that compromises the rule of secrecy.[130] There, the Ninth Circuit based its decision on the "particularized need" standard from *Dennis*, reasoning that a defendant would have no recourse if a particularized need for grand jury records arose if no recording existed.[131] While the *Price* court did not explicitly address the

---

permissive, not mandatory. The court below expressly concluded that 'no sufficient justification' was found. The Defendant's argument that transcripts would be valuable for impeachment purposes at trial could be advanced in the case of every grand jury proceeding and subsequent trial."); *State v. Thomas*, 674 S.W.2d 131, 134 (Mo. Ct. App. 1984) ("Appellant attempts to demonstrate that the nature of this case was such that the failure to order the grand jury testimony transcribed constituted an abuse of discretion. . . . While the nature of the case might be a matter to be considered by the trial court in ruling on a motion of the kind involved in this case, we find nothing in the record to support appellant's contention that the witnesses for the state were not co-operative with the prosecutor."); *State v. Bryan*, 2020 WL 3512759, at *1 (Ga. Super. June 18, 2020) ("Defendant is correct that the law of Georgia does not preclude the recordation of the proceeding. However, and significantly, he does not have an absolute right to record the proceeding." (internal citation omitted)); *McKissack v. State*, 926 So. 2d 367, 372 (Ala. 2005) (reversing appellate court's order for recordation because the defendant had not "made the required showing of the likelihood of inconsistencies between the grand-jury testimony" of the witnesses and those witnesses' trial testimony).

[128] 474 F.2d 1223 (9th Cir. 1973).

[129] *Id.* at 1225.

[130] *Id.*

[131] *See id.* at 1225–26 ("[E]ven if their showing had been overwhelming, it would have been futile because the nonexistent is nonproducible, and the Government had arranged that no record be made.").

Jencks Act, its decision applies equally if not more so to the disclosure obligations under the *Jencks* Rule, where disclosure is automatic once a witness testifies.[132]

In Delaware, the more restrictive language of Superior Court Criminal Rule 6(e)(1) cannot be construed as stamping a burden on the State to justify why there should be no recording. Nor can it be read to impose the burden upon the defendant in all cases. The key difference between the open-ended FRCP 6(d) examined in the *Price* decision and Delaware's Rule is Delaware's explicit requirement for court approval prior to recording.[133] During the 1970-79 federal discretionary recording period, it appears that the government was free to record grand jury testimony if it so chose, without prior court approval, and commonly did.[134] By contrast, the express language of Superior Court Criminal Rule 6(e)(1) prohibits recording by the request of the State *or* the defendant absent prior Court approval. Thus, the default presumption in Delaware, which the movant must overcome, is that grand jury proceedings will not be recorded. The burden to overcome that presumption must fall on whichever party requests approval to record the proceedings.

While policy considerations underlying the *Price* rule – that the burden is on the government to justify not recording – are compelling, the Court has no authority to rewrite the Delaware Rule by shifting the burden from the movant to the non-movant.[135] The unique language in Delaware's Rule 6(e)(1) singularly answers the

---

[132] While no other Circuit court appears to have either formally adopted or rejected this rule, it was followed by at least one district court outside of the Ninth Circuit. *See In re Grand Jury Investigation of Titanium Indus.*, 471 F. Supp. 37, 37–38 (W.D. Pa. 1978) (granting a pre-indictment request for recordation based on the rule established in *Price*).

[133] *See* Super Ct. Crim. R. 6(e)(1) (providing that grand jury proceedings "may be recorded stenographically or by an electronic recording device *only with the approval of the court*" (emphasis added)).

[134] *See United States v. Gramolini*, 301 F. Supp. 39, 41 (D.R.I. 1969) (noting that in the judge's 18 years of experience as a prosecutor every grand jury proceeding had been recorded either electronically or manually).

[135] *See Wilson v. Joma, Inc.*, 561 A.2d 993, 1989 WL 68304, at \*2 (Del. 1989) (TABLE) ("Plaintiff's assertion that relief should be granted under Rule 6(b) unless defendants can establish

question. If either the State or a defendant seeks to record grand jury witness testimony, that party bears the burden of persuading the Court that recording is justified.

### C. The standard for ordering production is one of good cause and not extraordinary circumstances; the latter conflates grand jury secrecy with the mere recording and preservation of testimony

Rule 6(e)(1) is silent as to the standard that should guide the Court's discretion on a pre-indictment motion to record grand jury testimony. As referenced above, in *State v. Grossberg*, the Superior Court also denied a request to record grand jury proceedings in the only Delaware written decision commenting on the appropriate standard.[136] In that decision, the court supplied little reasoning, and simply noted that the decision fell within its discretion.[137] In doing so, the court denied the defendant's request to approve recording because the defendants had "failed to demonstrate any extraordinary circumstance inherent in these cases for the recording of the grand jury proceeding . . . ."[138]

In a recent bench decision addressing a motion similar to Mr. Ponzo's, the Superior Court declined to hold that "extraordinary circumstances" was the appropriate standard.[139] Nevertheless, the Court denied the motion because even under a lesser standard, such as good cause, the defendant failed to make an adequate showing "to make an exception to . . . the well-recognized practice in Delaware."[140]

---

prejudice would impermissibly shift the burden of proof under Rule 6(b) from the movant. To do so would be to rewrite the Rule.").

[136] 1996 WL 769342, at *1.

[137] *Id.*

[138] *Id.*; *see also Wescott*, No. 2011008215, at 15:1–14 (denying a request to record grand jury witness testimony in light of years of Superior Court practice and referring favorably the to the "extraordinary circumstances" language in *Grossberg*).

[139] *See State v. Morris*, No. 2203004409, at 35:21–23 (Del. Super. June 24, 2022) (TRANSCRIPT) (declining to hold that extraordinary circumstances "is necessarily the standard").

[140] *Id.* at 35:23–36:5.

Case law from other states with discretionary recording likewise provides little uniform guidance as to what standard to apply to such a motion. They have imposed a variety, including good cause (Maine),[141] interests of justice (Florida),[142] likelihood of inconsistencies (Alabama),[143] and seemingly unfettered discretion, taking into account such factors as severity of the alleged offense (Missouri).[144] The parties, however, could not identify case law from any jurisdiction (other than *Grossberg* in Delaware) that imposes "extraordinary circumstances" as the standard applicable to a pre-indictment request to record grand jury proceedings.

At the outset, the "extraordinary circumstances" burden used in *Grossberg* finds no support in the text of Rule 6(e)(1). Such a high burden would seem impossible to reconcile with the disclosure requirement in Rule 26.2(f)(3), which unequivocally contemplates the existence of recordings or transcripts in some cases. At its root attempt, imposing such a standard to mere recording wrongly conflates two separate functions: disclosure and preservation.

Where a rule of procedure does not explicitly identify the standard, Delaware courts typically apply one of "good cause" to guide their exercise of discretion. For example, in the context of motions for discovery in Rule 61 motions for post-conviction relief, the Delaware Supreme Court has said that the "Superior Court possesses 'inherent authority under Rule 61 in the exercise of its discretion to grant

---

[141] Maine R. Crim. P. 6(f).

[142] *Thompson*, 565 So. 2d at 1313.

[143] *See McKissack*, 926 So. 2d at 372. The Alabama Supreme Court in *McKissack* expressed some doubt about whether the trial court had authority to order recordation at all. *See id.* at 371 ("This Court need not reach the basic question of whether a trial court can order the preservation of grand-jury testimony under certain circumstances because, even accepting that premise, we conclude that no reversible error occurred when the trial court here refused to order the preservation of grand-jury testimony under the circumstances of this case.").

[144] *Thomas*, 674 S.W.2d at 134–35.

particularized discovery for good cause shown.'"[145] Moreover, "good cause" appears in the Superior Court Criminal Rules as a discretionary standard in fourteen separate rules.[146] The "extraordinary circumstances" standard appears only twice.[147] In the Superior Court Criminal Rule 35 context, for example, a defendant must prove extraordinary circumstances to justify a modification of sentence after the 90-day time limit elapses.[148] As the language suggests, extraordinary circumstances requires a "highly unusual set of facts" to meet the defendant's burden.[149] Such a heavy burden should be reserved for the protection of extraordinarily compelling interests, such as the finality of a judgment.[150] Given that recognition, the Court should not impose such a high standard in a rule that does not explicitly provide for it.

Here, the State argues that an "extraordinary circumstances" burden under Rule 6(e)(1) is justified to preserve grand jury secrecy. Contrary to the State's argument, meeting the traditional test for disclosure should not be a prerequisite to initially record testimony because a recording that is not disclosed cannot imperil

---

[145] *Cabrera v. State*, 173 A.3d 1012, 1032 (Del. 2017) (quoting *Dawson v. State*, 673 A.2d 1186, 1197 (Del. 1996)); *cf. In re Asbestos Litig.*, 228 A.3d 676, 681–82 (Del. 2020) (concluding that "[g]ood cause is the proper standard under Delaware law" to modify a scheduling order despite the phrase having been removed from the court rule).

[146] *See, e.g.*, Super. Ct. Crim. R. 16(f)(1) (court may enter a protective order or disclosure order upon a showing of good cause); Super. Ct. Crim. R. 5.1(d) (disclosure requirement of Rule 26.2 applies in preliminary hearings "unless the court, for good cause shown, rules otherwise in a particular case"); Super. Ct. Crim. R. 12.3(3) ("If good cause is shown, the court may allow a party additional time to comply with any obligation imposed by this rule.").

[147] Super. Ct. Crim. R. 35(b) (requiring extraordinary circumstances for the Court to reduce a sentence of imprisonment more than 90 days after it is imposed); Super. Ct. Crim. R. 5(d) (time limit for scheduling a defendant's preliminary examination before a magistrate after arrest may only be extended upon a showing of extraordinary circumstances).

[148] *State v. Diaz*, 113 A.3d 1081, 2015 WL 1741768, at *2 (Del. 2015) (TABLE).

[149] *Id.* (quoting Black's Law Dictionary (10th ed. 2014)).

[150] *See id.* ("In order to uphold the finality of judgments, a heavy burden is placed on the defendant to prove extraordinary circumstances when a Rule 35 motion is filed outside of ninety days of the imposition of a sentence.").

grand jury secrecy.[151] As the Ninth Circuit explained in *Price*, "[s]ecrecy of grand jury proceedings is not jeopardized by recordation. The making of a record cannot be equated with disclosure of its contents, and disclosure is controlled by other means."[152] As noted *supra*, Delaware case law provides that disclosure is warranted under Rule 6(e)(3) when the interests of justice require it.[153] Moreover, where a binding court rule such as Superior Court Criminal Rule 26.2(f)(3) provides for the automatic disclosure of the recording – without a particularized showing that the interests of justice require it – the drafters of the rule have preemptively concluded that the benefits of including such statements in *Jencks* productions outweighs the traditional policy of secrecy. Accordingly, an extraordinary circumstances standard does not apply to a request to simply record proceedings.

Mr. Ponzo would have the Court go further, however, and hold that no exercise of discretion is required because Rule 26.2 requires the Court to simply grant pre-indictment requests for recordation as a matter of course. He argues that the court approval requirement was intended to serve as a mere gatekeeping function, rather than to require a true exercise of discretion. Under his reading of Rule (6)(e)(1), the Court is merely required to control which portions of the grand jury proceedings are recorded to prevent surreptitious recording by unauthorized persons.[154]

---

[151] *See* State's Resp. to Defense Mot. for Court Approval of Recording of Grand Jury Testimony ¶ 8 (arguing that the extraordinary circumstances standard is simply a test for operationalizing the interests of justice standard for disclosure).

[152] *Price*, 474 F.2d at 1225; *see also Peterson*, 2019 WL 4493494, at *5 ("Despite recordation, the secrecy of grand jury proceedings will still be protected by the standards necessary for disclosure – standards which have been established in the Louisiana Code of Criminal Procedure."); *McMahon*, 465 P.2d at 551 ("It cannot seriously be argued that [recordation] will invade the proper secrecy of grand jury proceedings.").

[153] *Jessup*, 136 A.2d at 217; *see also Steigler*, 250 A.2d at 382 (explaining that "in circumstances where the interests of justice require it, disclosure of proceedings before the Grand Jury may be ordered by the Superior Court").

[154] Tr. of Oral Arg. at 8:12–9:5.

Neither the text, history, nor past application of the rule support his position. Given the structure and timing of the revision to both Rules, Delaware Superior Court's Rule 6(e)(1) appears to be a deliberate rejection of FRCrP 6(e)(1), and thus a rejection of recording as a matter of course. Viewed in this context, court approval makes sense only if such approval depends on an exercise of judicial discretion based on a showing by the moving party. Moreover, the plain text of the rule does not support Mr. Ponzo's "gatekeeping" interpretation. Namely, the rule requires the court to approve (or not approve) recording—not to supervise the recording process to enforce the unambiguous provisions of Rule 6. As written, the Rule already provides that only a stenographer or operator of a recording device may be present to record, and that deliberations and voting can never be recorded.[155] Court approval is not necessary to ensure those strictures are followed. Mr. Ponzo incorrectly asks the Court to write a mandatory recording requirement into Delaware's discretionary rule.

Predominantly, "[g]ood cause is often the burden placed on a litigant . . . to show why a request should be granted or an action excused."[156] In this way, a standard of good cause fits the text and structure of the Rule. As explained below, it requires a showing that there is a reason, specific to the case at hand, to depart from the default of non-recordation. It nevertheless should not set the threshold so high as to render the Court's discretion to record, or the disclosure obligation under Rule 26.2(f)(3), a total nullity. Good cause, and not extraordinary circumstances, is the appropriate burden to impose on a movant requesting the recording of grand jury witness testimony.

---

[155] Super. Ct. Crim. R. 6(d) and (e)(1).
[156] *Asbestos Litig.*, 228 A.3d at 684 n.2 (Vaughn, J., dissenting) (alteration in original) (quoting Black's Law Dictionary (11th ed. 2019)).

**D.    Mr. Ponzo fails to demonstrate good cause by merely alleging that recording is necessary in all cases.**

At a high level of generality, good cause means a legally sufficient reason.[157] While the precise content of the "good cause" standard varies significantly by context, one common theme is that good cause requires a case-specific factual showing (i.e., that there are some circumstances not present in every case) to justify a departure from the general rule.[158]  The Court need not reach the issue of what might constitute good cause in a different case because Mr. Ponzo attempts no case specific showing in his motion.   Nevertheless, as the foregoing discussion suggests, the good cause standard should not be construed as prohibitively difficult for a defendant to overcome.

Of the jurisdictions that the Court has examined, Maine's rule is closest to Delaware's, except that Maine's rule specifically requires a showing of good cause where Delaware's is silent.  Maine's Rule of Criminal Procedure 6(f) provides that "[u]pon motion of the defendant or the attorney for the State, the court, in its discretion for good cause shown, may order that a court reporter or operator of electronic recording equipment be present for the purpose of taking evidence."[159] Consistent with the general rule that "good cause" requires a case-specific showing,

---

[157] *Id.* at 684 (citing Black's Law Dictionary (11th ed. 2019)); *see also State v. Damme*, 944 N.W.2d 98, 100 (Iowa 2020) (concluding "that 'good cause' means a 'legally sufficient reason.'").
[158] *See, e.g.*, *State v. Grant*, 225 A.3d 254, 258 (Vt. 2019) ("A rule of law that establishes that good cause exists in every case is inconsistent with the notion, implicit in the concept of good cause, that a finding of good cause can support an exception to a general rule."); *Rakes v. Fulcher*, 172 S.E.2d 751, 756 (Va. 1970) ("We interpret good cause as used in our Rule 4:9 to mean that before any party is entitled to the production of documents or other tangible things, such as are involved in this case, there must be a showing of some special circumstances in addition to relevancy."); *U.S. ex rel. Callahan v. U.S. Concology, Inc.*, 2005 WL 3334296, at *1–2 (W.D. Va. Dec. 7, 2005) (looking for definitions of "good cause" and concluding that it requires a "particularized showing" rather than one that could be made in "virtually every" case).
[159] Maine R. Crim. P. 6(f).  The "good cause" standard was located in section 6(d) in an earlier version of the rule.

the Supreme Judicial Court of Maine found good cause absent where, *inter alia*, a defendant sought transcripts for impeachment purposes only. The Maine court recognized that such reason does *not* constitute good cause because it could "be advanced in the case of every grand jury proceeding and subsequent trial."[160]

The Maine court's recognition that a demonstration of good cause requires some fact specific support is correct. Here, Mr. Ponzo has identified no facts to distinguish his case from any other that would go before a Delaware grand jury. Since he has cited no individual circumstance to differentiate his case from any other, he has not demonstrated good cause.

The Court is not blind to the extreme practical difficulties that a defendant will face under even a good cause standard under Rule 6(e)(1). The State controls the information presented to the grand jury and the timing of its presentation. Given the State's (1) monopoly of information, (2) other attributes of the grand jury process including the timing of presentations before the grand jury, and (3) the traditional imbalance of information made available to a criminal defendant so early in the process, a defendant will still face considerable – often insurmountable – hurdles when attempting to demonstrate even good cause. Nevertheless, while an extraordinary circumstances burden will in fact foreclose nearly every conceivable request (and has done so in practice), there may be some circumstance where a defendant could meet the more lenient, though often still out of reach, burden of demonstrating good cause.

---

[160] *Rich*, 395 A.2d at 1127. In a recent decision, the Supreme Judicial Court explained in its procedural background that the trial court had granted a motion to record grand jury proceedings, presumably upon a showing of good cause (as required by the rule), before a defendant was indicted on murder charges. *State v. Moore*, 290 A.3d 533, 537 (Me. 2023). The trial court denied a later motion for disclosure of the recordings, however, finding that particularized need had not been shown. *Id.* The Supreme Judicial Court affirmed that aspect of the decision, emphasizing that there is no right to disclosure under the United States Constitution. *Id.* at 540.

In addition to recognizing this difficult burden, Rule 6(e)(1) creates another marked inequity. Namely, the State, with its monopoly on information about a pending case and its control over the grand jury process, could easily make a fact specific showing sufficient to demonstrate good cause to record proceedings. In other words, the State has both a right under the current Rule *and* a practical remedy. A defendant, on the other hand, will rarely, if ever, have the same remedy. That, in large part, is a *non sequitur*, because the State, who has a practical remedy, is unlikely to need it because it has statutory subpoena power. The current structure of the rule works to the advantage of the party who will not benefit from it and to the detriment of the party who could.

Given Delaware's adoption of FRCrP 26.2(f)(3), fairness and consistency in the rules weigh heavily in favor of adopting a mandatory recording requirement akin to FRCrP 6(e)(1). In the Rule's current form, even with a good cause standard, the Delaware Superior Court rules create an empty right to an entire category of *Jencks* material. The Federal Advisory Committee notes preceding the relevant federal rule change recognized the importance of mandatory recording for the purpose of enhancing the integrity of the federal grand jury system. Delaware's grand jury system could also benefit from the increased accountability that would naturally flow from mandatory recording – particularly in the light of the current practice, per the State's representation, that indictments are frequently obtained based upon hearsay alone.[161] That, all should agree, is not a best practice. It has most likely developed over decades where there has been no record of the proceedings. Over time, a mandatory recording requirement would help to improve the process by making it more accountable by creating a consistent and reliable record.

---

[161] *See* Tr. of Oral Arg. at 31:9–13 (explaining that agency representatives testify "from their collective knowledge and the information that's been relayed to them"); *id.* at 53:22–54:1 (indicating that it is "often a representative just reading from the warrant").

Since the text, history, and historical application of the current rule support placing the burden of proof on the movant, and because even a good cause standard requires a showing of some facts specific to the case at hand, Mr. Ponzo has not met his burden to obtain court approval to record grand jury witness testimony. Only a rule change can address Mr. Ponzo's *Jencks*-based concerns and those process related concerns discussed above.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Mr. Ponzo's motion for approval for the recording of grand jury witness testimony. The Rule does not require automatic recording upon request, and Mr. Ponzo has not demonstrated good cause to record the grand jury witness testimony presented in support of his indictment.